### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:19-cv-346** |
| | ) | **JUDGE DOUGLAS R. COLE** |
| **MILLER-VALENTINE OPERATIONS,** et al., | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

### CONSENT ORDER

### I. INTRODUCTION

1.     This action is brought by the United States to enforce provisions of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–3619, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181–12189. Specifically, the United States' Complaint alleges that Defendants identified in paragraph 2, below, have engaged in a pattern or practice of discrimination against persons with disabilities and denied rights to a group of persons because of disability by failing to design and construct the following covered multifamily dwellings (the "Subject Properties") with the features of accessible and adaptive design and construction required by subsections 804(f)(1), 804(f)(2) and 804(f)(3)(C) of the FHA, 42 U.S.C. §§ 3604(f)(1), (f)(2), and (f)(3)(C), and, with the exception of Bent Tree Apartments II; Indian Trace II; Lofts at One West High Street; Meadow View South; Scioto Woods I; Stone Creek Apartments; The Landings at Steele Creek I; and Twin Cedars I, in a manner required by the ADA, 42 U.S.C. § 12183(a)(1):

  1.     Galena Estates, Galena, KS
  2.     Reserve at Oak Spring, Clarksburg, WV
  3.     Lyons Place II, Dayton, OH
  4.     Oak Ridge Apartments, Nolanville, TX
  5.     Reserve at Spencer, Spencer, OK
  6.     Fairway Breeze Apartments, El Reno, OK
  7.     Silversage Point at Western Center, Fort Worth, TX
  8.     Hampshire Landing, Joplin, MO
  9.     Riverside Landing at Delaware Place, Delaware, OH

10. St. Bernard Commons, St. Bernard, OH
11. Twin Lakes Senior Villas, Rantoul, IL
12. Carriage Trails Senior Villas, Huber Heights, OH
13. Gallatin Park Apartments, Gallatin, TN
14. Meadow Vista Senior Villas, Altoona, IA
15. Summit Pointe, Lawrenceburg, IN
16. The Enclave at Winston-Salem, Winston-Salem, NC
17. Whitehouse Square Senior Villas, Whitehouse, OH
18. Allegheny Pointe, Apollo, PA
19. Lyons Place I, Dayton, OH
20. Waterstone Landing, Perrysburg, OH
21. Lofts at One West High, Oxford, OH
22. St. Rita's Senior Housing, Garfield Heights, OH
23. Faith Community Housing, Crestline, OH
24. Lake Towne Senior, Walbridge, OH
25. Queen Esther's Village, Canton, OH
26. Walkers Ridge Apartments, Greensburg, PA
27. Walnut Run Senior Villas, Cortland, OH
28. Harmony Senior Village, Williamsburg, OH
29. Lofts at Hoover, Dayton, OH
30. Pinecrest Apartments, Walkertown, NC
31. Pine Ridge, Logan, OH
32. Riverview Bluffs, New Richmond, OH
33. Villas at Twin Cedars, Hickory, NC
34. Pheasant Run Senior, Dayton, OH
35. Scioto Woods II, Chillicothe, OH
36. Wright Place Apartments, Xenia, OH
37. Madison Place Senior, Gastonia, NC
38. Honey Creek, Greenwood, IN
39. River Crossing, Charlotte, NC
40. Sandhurst, Zanesville, OH
41. The Landings at Steele Creek I, Charlotte, NC
42. Twin Cedars I, Hickory, NC
43. Deerfield Crossing, Lebanon, OH
44. Holly Hills Apartments, Jackson, OH
45. Mallard Glen, Amelia, OH
46. Mallard Landing, Marion, OH
47. The Landings at Steele Creek II, Charlotte, NC
48. Twin Cedars II, Hickory, NC
49. Bridge Street Landing, Chillicothe, OH
50. Brookdale Trillium Crossing, Columbus, OH
51. Brookstone Apartments, Bellefontaine, OH
52. Cedar Wood Apartments, Mansfield, OH
53. Meadow Creek Apartments, Bryan, OH

54.  Mill Pond, Muncie, IN
55.  Oak Wood Apartments, Lexington, OH
56.  Sycamore Creek Apartments, Sidney, OH
57.  Timberlake Apartments, Vandalia, OH
58.  Windsor Place, Beavercreek, OH
59.  Bent Tree Apartments II, Piqua, OH
60.  Eagles Point Apartments, Kenton, OH
61.  Glen Arbors Apartments, Napoleon, OH
62.  Hoover Place, Dayton, OH
63.  Indian Trace II, Oxford, OH
64.  Waterbury Apartments, Decatur, IN
65.  Breckenridge Apartments, Findlay, OH
66.  Fox Run, Trotwood, OH
67.  Hunter's Oak Apartments, Greenville, OH
68.  Indian Trace I, Oxford, OH
69.  Quail Run Apartments, Van Wert, OH
70.  Scioto Woods I, Chillicothe, OH
71.  Aspen Grove Apartments, Middletown, OH
72.  Bent Tree Apartments I, Piqua, OH
73.  Cobblegate Square Apartments, Moraine, OH
74.  Siena Village Senior Living, Dayton, OH
75.  Stone Creek Apartments, Moraine, OH
76.  Timber Glen II (TGII), Batavia, OH
77.  Timber Ridge Apartments, Dayton, OH
78.  Weaver Farm Apartments, Florence, KY
79.  Wind Ridge Apartments, Tipp City, OH
80.  Cedar Trail, Bellbrook, OH
81.  Harbour Cove Apartments, Cincinnati, OH
82.  Meadow View South, Springboro, OH

For purposes of this Consent Order ("Order"), the United States and Defendants agree that the Subject Properties are subject to the accessible design and construction requirements of the FHA, 42 U.S.C. §§ 3604(f)(1), (f)(2), and (f)(3)(C), and, with the exception of Bent Tree Apartments II; Indian Trace II; Lofts at One West High Street; Meadow View South; Scioto Woods I; Stone Creek Apartments; The Landings at Steele Creek I; and Twin Cedars I, the ADA, 42 U.S.C. § 12183(a)(1).

## A.  Defendants

2.  Defendants MVO Holdings, LLC[1]; Miller-Valentine Construction, Inc.; Miller-Valentine Partners Ltd.; Miller-Valentine Partners Ltd. II; Miller-Valentine

---

[1] MVO Holdings, LLC purchased and was assigned all of the assets and liabilities of Miller-Valentine Operations, Inc., including all subsidiaries such as the construction and development entities.

Apartments Ltd.; Miller-Valentine Apartments II Ltd; Miller-Valentine Apartments III LLC; MV Commercial Construction LLC; MV Residential Construction, Inc.; MV Affordable Housing LLC; MV Residential Development LLC; Allegheny Pointe Limited Partnership; Carriage Trails Senior Village, LLC; MV/ALG Deerfield Crossings Limited; Galena Estates, LLC; Gallatin Park Apartments, LLC; Hampshire Terrace II Limited Partnership; Harmony Senior Village, LLC; MV/ALG Honey Creek Limited; Indian Trace Limited Partnership; Arrowhead Crossing Limited; Lake Towne Senior Village, LLC; Madison Place Senior Apartments, LLC; MV/ALG Mallard Landing Limited; Meadow Vista Senior Villas, LLC; MV/ALG Mill Pond Limited; TX Nolanville Apartments, Ltd. Co.; Pinecrest Apartments, LLC; Reserve at Rose Bud, LLC; Reserve at Spencer, LLC; MV/ALG River Crossing Limited; Delaware Place Senior Apartments, LLC; Riverview Bluffs Associates, LP; MV/ALG Sandhurst Limited; Scioto Woods II, LLC; Mercy Siena Village Limited Partnership; Western Center Reserve, LLC; St. Rita's Senior Housing, LLC; The Enclave at Winston-Salem, LLC; MV/ALG Steele Creek Limited; Steele Creek Apartments Limited Partnership; MV/ALG Twin Cedars Limited; Twin Cedars Limited Partnership; Twin Lakes Senior Villas Limited Partnership; Villas at Twin Cedars, LLC; Weatherwood Place Limited Partnership; Perrysburg Apartment Investment LLC; Whitehouse Square Senior Village, LLC; and MV/ALG Windsor Place Limited (hereafter "Defendants") are associated with the design and construction of the Subject Properties. See <u>Appendix A</u>.

Defendants deny the allegations asserted in the Complaint, including but not limited to the allegation in the Complaint that any of the Subject Properties or other properties affected or referenced in the Complaint or this Consent Order (collectively, "Defendant Properties") are not in compliance with the FHA, ADA, or any other applicable local, state, or federal code, rule, or regulation pertaining to accessibility (the "Accessibility Requirements"), and Defendants further deny any assertion that they intentionally or otherwise failed to comply with such Accessibility Requirements in their ownership, design, development, and/or construction of such Defendant Properties.

## B.   Relevant Requirements of the Fair Housing Act

3.   The FHA provides that, for residential buildings with an elevator consisting of four or more dwelling units, all units that are designed and constructed for first occupancy after March 13, 1991, are "covered multifamily dwellings" and must include certain basic features of accessible and adaptive design to make such units accessible to or adaptable for use by a person who has or develops a disability. 42 U.S.C. §§ 3604(f)(3)(C) and (f)(7)(A).

4.   The FHA provides that, for non-elevator residential buildings with four or more dwelling units, all ground-floor units that are designed and constructed for first occupancy after March 13, 1991, are "covered multifamily dwellings" and must

include certain basic features of accessible and adaptive design to make such units accessible to or adaptable for use by a person who has or develops a disability. 42 U.S.C. §§ 3604(f)(3)(C) and (f)(7)(B).

5. The accessible and adaptive design provisions of the FHA require that for covered multifamily dwellings: (i) the public use and common use portions of such dwellings are readily accessible to and usable by persons with a disability; (ii) all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by persons with a disability using wheelchairs; (iii) all premises within such dwellings contain the following features of adaptive design: (I) an accessible route into and through the dwelling; (II) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations; (III) reinforcements in bathroom walls to allow later installation of grab bars; and (IV) usable kitchens and bathrooms such that an individual using a wheelchair can maneuver about the space. 42 U.S.C. § 3604(f)(3)(C). These features are referred to herein as the "Accessible Design Requirements."

6. For the purposes of this Order, the parties agree that the Subject Properties were designed and constructed for first occupancy after March 13, 1991, and therefore all the units in buildings with elevators and the ground-floor units in non-elevator buildings at the Subject Properties are "covered multifamily dwellings" within the meaning of the FHA, 42 U.S.C. §§ 3604(f)(7)(A) and (B). As such, those units and the public and common use areas including the accessible pedestrian routes at the Subject Properties must comply with the Accessible Design Requirements of 42 U.S.C. § 3604(f)(3)(C).

## C. Relevant Requirements of the Americans with Disabilities Act

7. The ADA, and the ADA Standards for Accessible Design, ADA Accessibility Guidelines for Buildings and Facilities, 28 C.F.R. pt. 36, app. A ("ADA Standards"), that have been issued by the U.S. Department of Justice to implement the design and construction requirements of Title III of the ADA, also require that all "public accommodations" designed and constructed for first occupancy after January 26, 1993, and the goods, services, facilities, privileges, advantages, or accommodations of those public accommodations, be readily accessible to and usable by persons with disabilities in accordance with certain accessibility standards promulgated under that Act. 42 U.S.C. §§ 12182(a) and 12183(a)(1). A rental or sales office for an apartment, condominium, or patio home complex is a "public accommodation" under the ADA. 42 U.S.C. § 12181(7)(E).

8. For the purposes of this Order, the parties agree that the rental offices for the Subject Properties, with the exception of Bent Tree Apartments II; Indian Trace II; Lofts at One West High Street; Meadow View South; Scioto Woods I; Stone Creek Apartments; The Landings at Steele Creek I; and Twin Cedars I, were designed

and constructed for first occupancy after January 26, 1993, and therefore the rental offices and the facilities and privileges provided at those offices such as public parking are required to be designed and constructed in accordance with the standards promulgated under the ADA.

## D. Relevant Requirements of the Rehabilitation Act of 1974

9. The Rehabilitation Act of 1973, 29 U.S.C. § 794, as amended, requires that federally owned and federally assisted properties be accessible to qualified persons with a disability. Specifically, regulations adopted by the United States Department of Agriculture ("USDA") and the United States Department of Housing and Urban Development ("HUD") require certain newly constructed multifamily housing projects to include features of accessibility for mobility impaired individuals in five percent of the total number of units in the project.[2] The Uniform Federal Accessibility Standards ("UFAS") are the technical standards adopted by the USDA and HUD for implementing the accessibility requirements under the Rehabilitation Act. HUD also allows the use of the 2010 ADA Standards for Accessible Design ("2010 ADA Standards") as an alternative technical standard to UFAS that may be used for HUD-funded projects covered by the Rehabilitation Act.

## E. Subject Properties

10. The 82 properties discussed below comprise the Subject Properties.

11. Allegheny Pointe is located at 662 Cedar Ridge Drive, Apollo, PA. It is an apartment rental property with 20 single-level, two-unit buildings and three single-level, four-unit buildings. It has a playground and a community building with a leasing office, bathrooms, a community room, a kitchenette, a computer room, and a laundry room. It was constructed for first occupancy in 2010. Allegheny Pointe was developed using Low-Income Housing Tax Credits, HOME funds, and loans from the USDA's Section 515 Program.

---

[2] To support the building of affordable housing, HUD provides grants under the HOME Investment Partnership Program and the USDA provides loans and loan guarantees through the Rural Rental Housing Loans Section 515 Program and the Rural Housing Service's Section 538 Guaranteed Housing Program. Subject Properties that received HOME funding or USDA loan funding or guarantees shall be surveyed to identify violations of UFAS, in addition to the FHA and ADA. These properties are: Allegheny Pointe; Carriage Trails Senior Villas; Cedar Wood Apartments; Faith Community Housing; Harmony Senior Village; Lake Towne Senior; Mallard Glen; Meadow Creek Apartments; Oak Ridge Apartments; Oak Wood Apartments; Pheasant Run Senior; Pine Ridge; Quail Run Apartments; Reserve at Oak Spring; Riverview Bluffs; Scioto Woods I; Scioto Woods II; Siena Village Senior Living; Silversage Pointe at Western Center; Sycamore Creek Apartments; Whitehouse Square Senior Villas; The Enclave at Winston-Salem; Summit Pointe; Walkers Ridge Apartments; and Walnut Run Senior Villas.

6

12.     Aspen Grove Apartments is located at 1925 Aaron Drive, Middletown, OH. It is an apartment rental property with seven three-level, 12-unit buildings. It has 84 total units, 21 of which are FHA-covered ground-level units. It has a leasing office, common laundry facilities and mail areas, a playground, and trash dumpster facilities. It was constructed for first occupancy in 1997. Aspen Grove Apartments was developed using Low-Income Housing Tax Credits.

13.     Breckenridge Apartments is located at 2070 Breckenridge Road, Findlay, OH. It is an apartment rental property with six three-level, 12-unit buildings. It has 72 total units, 24 of which are FHA-covered ground-level units. It has a leasing office, common laundry facilities and mail areas, and trash dumpster facilities. It was constructed for first occupancy in 1998. Breckenridge Apartments was developed using Low-Income Housing Tax Credits.

14.     Bent Tree Apartments I is located at 1240 Garbry Road, Piqua, OH. It is an apartment rental property with seven three-level, 12-unit buildings. It has 84 total units, 28 of which are FHA-covered ground-level units. It has a leasing office, common laundry facilities and mail areas, and trash dumpster facilities. It was constructed for first occupancy in 1997. Bent Tree Apartments I was developed using Low-Income Housing Tax Credits.

15.     Bent Tree Apartments II is located at 1240 Garbry Road, Piqua, OH. It is an apartment rental property with two three-level, 12-unit buildings. It has 24 total units, eight of which are FHA-covered ground-level units. It has common laundry facilities and mail areas and trash dumpster facilities. It was constructed for first occupancy in 1999.

16.     Bridge Street Landing is located at 1920 North Bridge Street, Chillicothe, OH. It is an apartment rental property with seven three-level, 12-unit buildings. It has 84 total units, 28 of which are FHA-covered ground-level units. It has a leasing office, common laundry facilities and mail areas, a playground, and trash dumpster facilities. It was constructed for first occupancy in 2000. Bridge Street Landing was developed using Low-Income Housing Tax Credits.

17.     Brookdale Trillium Crossing (formerly known as Trillium Place) is located at 3500 Trillium Crossing, Columbus, OH. It is an apartment rental property with one five-level, 68-unit elevator building and one five-level, 150-unit elevator building. It has 218 total units, all of which are FHA-covered units. It has a leasing office, a pool, a beauty salon, a general store, a mail room, an activity room, a library, a multi-purpose room, a billiards room, an exercise room, a common living room and dining room, trash chutes, common laundry facilities, and common bathrooms. It was constructed for first occupancy in 2000.

18. Brookstone Apartments is located at 500 Gunntown Road, Bellefontaine, OH. It is an apartment rental property with eight three-level, 12-unit buildings. It has 96 total units, 32 of which are FHA-covered ground-level units. It has a leasing office, common laundry facilities and mail areas, a playground, and trash dumpster facilities. It was constructed for first occupancy in 2000. Brookstone Apartments was developed using Low-Income Housing Tax Credits.

19. Carriage Trails Senior Villas is located at 1000 Waterside Circle, Huber Heights, OH. It is an apartment rental property with three single-level, eight-unit buildings, one single-level, six-unit building, and one single-level, four-unit building. It has 34 total units, all of which are FHA-covered ground-level units. It has a clubhouse with a leasing office, a community room, a kitchenette, a laundry room, a mail room and bathrooms, a picnic pavilion, a community garden, a fishing pond, and a walking trail. It was constructed for first occupancy in 2012. Carriage Trails Senior Villas was developed using Low-Income Housing Tax Credits and HOME funds.

20. Cedar Trail is located at 1832 Surrey Trail, Bellebrook, OH. It is an apartment rental property with eleven three-level, 12-unit buildings. Cedar Trail has 132 total units, 44 of which are FHA-covered ground-level units. It has a leasing office, a gazebo, a playground, picnic areas, and trash dumpster facilities. It was constructed for first occupancy in 1996. Cedar Trail was developed using Low-Income Housing Tax Credits.

21. Cedar Wood Apartments is located at 478 East Cook Road, Mansfield, OH. It is an apartment rental property with eight three-level, 12-unit buildings. It has 96 total units, 32 of which are FHA-covered ground-level units. It has a leasing office, common laundry facilities and mail areas, a playground, and trash dumpster facilities. It was constructed for first occupancy in 2000. Cedar Wood Apartments was developed using Low-Income Housing Tax Credits and HOME funds.

22. Cobblegate Square Apartments is located at 2686 Cobble Circle, Moraine, OH. It is an apartment rental property with eleven three-level, 12-unit buildings. Cobblegate Square Apartments has 132 total units, 44 of which are FHA-covered ground-level units. It has a leasing office, common laundry facilities and mail areas, a playground, pet litter stations, a grill area, and trash dumpster facilities. It was constructed for first occupancy in 1997. Cobblegate Square Apartments was developed using Low-Income Housing Tax Credits.

23. Deerfield Crossing is located at 1111 Deerfield Road, Lebanon, OH. It is an apartment rental property with eight three-level, 12-unit buildings. It has 96 total units, 32 of which are FHA-covered ground-level units. It has a welcome center with a leasing office and a bathroom, common laundry facilities and mail areas, and trash dumpster facilities. It was constructed for first occupancy in 2001.

24.    Eagles Point Apartments is located at 815 Morningside Drive, Kenton, OH. It is an apartment rental property with six three-level, 12-unit buildings. It has 72 total units, 24 of which are FHA-covered ground-level units. It has a welcome center with a leasing office and a bathroom, common laundry facilities and mail areas, a playground, and trash dumpster facilities. It was constructed for first occupancy in 1999. Eagles Point Apartments was developed using Low-Income Housing Tax Credits.

25.    Fairway Breeze Apartments is located at 600 South Country Club Road, El Reno, OK. It is an apartment rental property with four three-level, 12-unit buildings. It has a playground, trash dumpster facilities, and a clubhouse with a leasing office, a multi-purpose room, a kitchenette, a bathroom, a fitness center, and a laundry room. It was constructed for first occupancy in 2014. Fairway Breeze Apartments was developed using Low-Income Housing Tax Credits.

26.    Faith Community Housing is located at 1000 Dove Lane, Crestline, OH. It is an apartment rental property with five single-level, four-unit buildings, one single-level, six-unit building, and three single-level, five-unit buildings. It has 41 total units, all of which are FHA-covered ground-level units. It has a welcome center with a leasing office, a community room, a kitchenette, an exercise room, a mail area, and bathrooms. It was constructed for first occupancy in 2008. Faith Community Housing was developed using Low-Income Housing Tax Credits, HOME funds and loans from the USDA's Rural Development Program.

27.    Fox Run is located at 261 Fieldstone Drive, Trotwood, OH. It is an apartment rental property with 12 three-level, 12-unit buildings. It has 144 total units, 48 of which are FHA-covered ground-level units. It has a leasing office and common laundry facilities. It was constructed for first occupancy in 1998. Fox Run was developed using Low-Income Housing Tax Credits.

28.    Galena Estates is located at 1910 East Village Circle, Galena, KS. It is an apartment rental property with two two-level, eight-unit buildings and one three-level 24-unit building. It has 40 total units, 16 of which are FHA-covered ground-level units. It has a playground, trash dumpster facilities, and a community building with a leasing office, a community room, a kitchen, a computer lab, bathrooms, a mail center, and a fitness center. It was constructed for first occupancy in 2016. Galena Estates was developed using Low-Income Housing Tax Credits.

29.    Gallatin Park Apartments is located at 271 Albert Gallatin Avenue, Gallatin, TN. It is an apartment rental property with two three-level, 12-unit buildings and one three-level 24-unit building. It has 48 total units, 16 of which are FHA-covered ground-level units. It has a playground, trash dumpster facilities, and a community building with a leasing office, a multi-purpose room, a kitchen, bathrooms, an exercise room, a laundry room, and a mail area. It was constructed for

first occupancy in 2012. Gallatin Park Apartments was developed using Low-Income Housing Tax Credits.

30. Glen Arbors Apartments is located at 2400 Glen Arbors Drive, Napoleon, OH. It is an apartment rental property with six three-level, 12-unit buildings. It has 72 total units, 24 of which are FHA-covered ground-level units. It has a leasing office, common laundry facilities and mail areas, a playground, and trash dumpster facilities. It was constructed for first occupancy in 1999. Glen Arbors Apartments was developed using Low-Income Housing Tax Credits.

31. Hampshire Landing is located at 2021 Hampshire Terrace, Joplin, MO. It is an apartment rental property with three three-level, 24-unit buildings and one three-level, 12-unit building. It has 84 total units, 28 of which are FHA-covered ground-level units. It has a playground, trash dumpster facilities, and a clubhouse with a leasing office, a community room, a kitchen, a library, a fitness center, a computer lab, a laundry room, a mail room, and bathrooms. It was constructed for first occupancy in 2013. Hampshire Landing was developed using Low-Income Housing Tax Credits.

32. Harbour Cove Apartments is located at 500 Anchor Drive, Cincinnati, OH. It is an apartment rental property with five three-level, 12-unit buildings and one two-level six-unit townhome building. It has 66 total units, 20 of which are FHA-covered ground-level units. It has a welcome center with a leasing office and bathrooms, common laundry facilities and mail areas, and trash dumpster facilities. It was constructed for first occupancy in 1996. Harbour Cove Apartments was developed using Low-Income Housing Tax Credits.

33. Harmony Senior Village is located at 175 N. 8th Street, Williamsburg, OH. It is an apartment rental property with one single-level, seven-unit building, three single-level, six-unit buildings, and one single-level, five-unit building. It has 30 total units, all of which are FHA-covered ground-level units. It has trash dumpster facilities and a welcome center with a leasing office, a community room, bathrooms, and a mail center. It was constructed for first occupancy in 2007. Harmony Senior Village was developed using Low-Income Housing Tax Credits, HOME funds and loans from the USDA's Rural Housing Service Section 538 Guaranteed Housing Program.

34. Holly Hills Apartments is located at 700 Holly Hills Drive, Jackson, OH. It is an apartment rental property with six three-level, 12-unit buildings. It has 72 total units, 24 of which are FHA-covered ground-level units. It has a welcome center with a leasing office, a bathroom, a meeting area, a computer area, common laundry facilities and mail areas, and trash dumpster facilities. It was constructed for first occupancy in 2001. Holly Hills Apartments was developed using Low-Income Housing Tax Credits.

35. Honey Creek is located at 1786 Honey Lane, Greenwood, IN. It is an apartment rental property with ten three-level, 12-unit buildings. Honey Creek has 120 total units, 40 of which are FHA-covered ground-level units. It has trash dumpster facilities and a welcome center with a leasing office, a laundry room and a bathroom. It was constructed for first occupancy in 2002.

36. Hoover Place is located at 5407 Hoover Avenue, Dayton, OH. It is an apartment rental property with one three-level, 144-unit elevator building. Hoover Place has 144 total units, all of which are FHA-covered units. It has a leasing office, a common dining and living room, a coffee shop, common bathrooms, lounges, an activity room, common storage and laundry facilities, a mail center, and a beauty/barber shop. It was constructed for first occupancy in 1999. Hoover Place was developed using Low-Income Housing Tax Credits.

37. Hunter's Oak Apartments is located at 1199 East Russ Road, Greenville, OH. It is an apartment rental property with six three-level, 12-unit buildings. It has 72 total units, 24 of which are FHA-covered ground-level units. It has a welcome center with a leasing office and a bathroom, common laundry facilities and mail areas, and trash dumpster facilities. It was constructed for first occupancy in 1998. Hunter's Oak Apartments was developed using Low-Income Housing Tax Credits.

38. Indian Trace I is located at 5081 Red Cloud Court, Oxford, OH. It is an apartment rental property with seven three-level, 12-unit buildings. It has 84 total units, 28 of which are FHA-covered ground-level units. It has a leasing office, common laundry facilities and mail areas, pet litter stations, a grill area, and trash dumpster facilities. It was constructed for first occupancy in 1998. Indian Trace I was developed using Low-Income Housing Tax Credits.

39. Indian Trace II is located at 5081 Red Cloud Court, Oxford, OH. It is an apartment rental property with six three-level, 12-unit buildings and one two-level four-unit building with two-story units. It has 76 total units, 24 of which are FHA-covered ground-level units. It has common laundry facilities and mail areas, pet litter stations, and trash dumpster facilities. It was constructed for first occupancy in 1999.

40. Lake Towne Senior is located at 4975 Lake Towne Drive, Walbridge, OH. It is an apartment rental property with one single-level, eight-unit building, one single-level, five-unit building, and five single-level, 6-unit buildings. Lake Towne Senior has 43 total units, all of which are FHA-covered ground-level units. It has trash dumpster facilities and a welcome center with a leasing office, a community room, a kitchenette bathrooms, and a mail center. It was constructed for first occupancy in 2008. Lake Towne Senior was developed using Low-Income Housing Tax Credits, HOME funds and loans from the USDA's Rural Development Program.

41.     Lofts at Hoover is located at 5348 Joshua Trail, Dayton, OH. It is an apartment rental property with ten single-level, 4-unit buildings. It has 40 total units, all of which are FHA-covered ground-level units. It has trash dumpster facilities and a welcome center with a leasing office, a mail center, a community room, a kitchen, and bathrooms. It was constructed for first occupancy in 2007. Lofts at Hoover was developed using Low-Income Housing Tax Credits.

42.     Lofts at One West High Street is located at 1 West High Street, Oxford, OH. It is an apartment rental property with one four-level, 11-unit elevator building. It has 11 total units, all of which are FHA-covered units. It was constructed for first occupancy in 2009.

43.     Lyons Place I is located at 1300 Genesis Way, Dayton, OH. It is an apartment rental property with one three-level, 61-unit elevator building. Lyons Place I has 61 total units, all of which are FHA-covered units. It has a leasing office, a multi-purpose room, common bathrooms, common storage and laundry facilities, a mail area, a vending area, an arts and crafts room, a reading loft and a patio. It was constructed for first occupancy in 2010. Lyons Place I was developed using Low-Income Housing Tax Credits.

44.     Lyons Place II is located at 4100 West Third Street, Dayton, OH. It is an apartment rental property with one three-level, 55-unit elevator building. It has 55 total units, all of which are FHA-covered units. It has a leasing office, a multi-purpose room, common bathrooms, common storage and laundry facilities, a mail area, a vending area, a recreation/media room, a reading loft, and a patio. It was constructed for first occupancy in 2015.

45.     Madison Place Senior is located at 4200 Forbes Road, Gastonia, NC. It is an apartment rental property with one three-level, 76-unit elevator building. It has 76 total units, all of which are FHA-covered units. It has a leasing office, a community room, a common kitchen and living room, common bathrooms, common storage and laundry facilities, trash rooms, a fitness center, a mail area, an arts and crafts room, a billiards room, a library, a hair salon, a patio, a picnic area, a walking trail, and a gazebo. It was constructed for first occupancy in 2003. Madison Place Senior was developed using Low-Income Housing Tax Credits.

46.     Mallard Glen is located at 21 Lori Lane, Amelia, OH. It is an apartment rental property with eight three-level, 12-unit buildings. It has 96 total units, 32 of which are FHA-covered ground-level units. It has a welcome center with a leasing office and a bathroom, common laundry facilities and mail areas, and trash dumpster facilities. It was constructed for first occupancy in 2001. Mallard Glen was developed using Low-Income Housing Tax Credits and HOME funds.

47.     Mallard Landing is located at 1205 Lake Boulevard, Marion, OH. It is an apartment rental property with eight three-level, 12-unit buildings. It has 96 total units, 32 of which are FHA-covered ground-level units. It has a welcome center with a leasing office and a bathroom, common laundry facilities and mail areas, and trash dumpster facilities. It was constructed for first occupancy in 2001.

48.     Meadow Creek Apartments is located at 1700-A East High Street, Bryan, OH. It is an apartment rental property with eight three-level, 12-unit buildings. It has 96 total units, 32 of which are FHA-covered ground-level units. It has a welcome center with a leasing office, a computer room, a bathroom, common laundry facilities and mail areas, a playground, and trash dumpster facilities. It was constructed for first occupancy in 2000. Meadow Creek Apartments was developed using Low-Income Housing Tax Credits and HOME funds.

49.     Meadow View South (formerly known as Timber Creek Apartments) is located at 45 Clearcreek Road, Springboro, OH. It is an apartment rental property with five three-level, 12-unit buildings. It has 60 total units, 20 of which are FHA-covered ground-level units. It has common laundry facilities and mail areas, a pool, a playground, and trash dumpster facilities. It was constructed for first occupancy in 1996. It was developed using Low-Income Housing Tax Credits.

50.     Meadow Vista Senior Villas is located at 1806 28th Avenue SW, Altoona, IA. It is an apartment rental property with seven single-level, six-unit buildings and two single-level, four-unit buildings. It has 50 total units, all of which are FHA-covered ground-level units. It has a gazebo, a picnic area, a community garden, a walking trail, and a clubhouse with a leasing office, a mail room, a community room, a kitchenette, bathrooms, a laundry room and a computer center. It was constructed for first occupancy in 2012. It was developed using Low-Income Housing Tax Credits.

51.     Mill Pond is located at 5310 West Keller Road, Muncie, IN. It is an apartment rental property with ten three-level, 12-unit buildings. It has 120 total units, 40 of which are FHA-covered ground-level units. It has a welcome center with a leasing office and a bathroom, common laundry facilities and mail areas, and trash dumpster facilities. It was constructed for first occupancy in 2000.

52.     Oak Ridge Apartments is located at 339 10th Street, Nolanville, TX. It is an apartment rental property with two three-level, 24-unit buildings.  It has 48 total units, 16 of which are FHA-covered ground-level units. It has a pool, a playground, trash dumpster facilities, and a clubhouse with a leasing office, a fitness room, an activity room, a kitchen, bathrooms, and a mail area. It was constructed for first occupancy in 2015. It was developed using Low-Income Housing Tax Credits and HOME funds.

53.     Oak Wood Apartments is located at 335 Castor Road, Lexington, OH. It is an apartment rental property with seven three-level, 12-unit buildings. It has 84 total units, 28 of which are FHA-covered ground-level units. It has a leasing office, common laundry facilities and mail areas, and a playground. It was constructed for first occupancy in 2000. It was developed using Low-Income Housing Tax Credits and HOME funds.

54.     Pheasant Run Senior is located at 2920 Old Troy Pike, Dayton OH. It is an apartment rental property with one three-level, 75-unit elevator building. Pheasant Run Senior has 75 total units, all of which are FHA-covered units. It has a leasing office, common bathrooms, a community room, an activity room, common laundry and storage facilities, trash chutes, a common living room and kitchen, a beauty shop, a mail center, a library, and a patio. It was constructed for first occupancy in 2004. It was developed using Low-Income Housing Tax Credits and HOME funds.

55.     Pine Ridge is located at 33520 Pine Ridge Drive, Logan, OH. It is an apartment rental property with six three-level, 12-unit buildings. Pine Ridge has 72 total units, 24 of which are FHA-covered ground-level units. It has a playground, trash dumpster facilities, and a welcome center with a leasing office, a bathroom, a computer room, and a mail area. It was constructed for first occupancy in 2006. It was developed using Low-Income Housing Tax Credits and HOME funds.

56.     Pinecrest Apartments is located at 3605 Martins Trail Circle, Walkertown, NC. It is an apartment rental property with ten two-level, eight-unit buildings. Pinecrest Apartments has 80 total units, 40 of which are FHA-covered ground-level units. It has a playground, a volleyball court, a horseshoe pit, a picnic area, a gazebo, trash dumpster facilities, and a community building with a leasing office, a TV area, a kitchenette, a conference area, a sitting area, bathrooms, a computer room, a laundry room and a mail area. It was constructed for first occupancy in 2007. It was developed using Low-Income Housing Tax Credits.

57.     Quail Run Apartments is located at 641 North Franklin Street, Van Wert, OH. It is an apartment rental property with five three-level, 12-unit buildings. It has 60 total units, 20 of which are FHA-covered ground-level units. It has a welcome center with a leasing office and a bathroom, common laundry facilities and mail areas, a playground, and trash dumpster facilities. It was constructed for first occupancy in 1998. It was developed using Low-Income Housing Tax Credits and HOME funds.

58.     Queen Esther's Village is located at 415 17th Street SE, Canton, OH. It is an apartment rental property with four single-level, four-unit buildings, one single-level, five-unit building, and two single-level, six-unit buildings. It has 33 total units, all of which are FHA-covered ground-level units. It has a welcome center with a

leasing office, bathrooms, a mail center, a community room, and a kitchenette. It was constructed for first occupancy in 2008. It was developed using Low-Income Housing Tax Credits.

59.     Reserve at Oak Spring is located at 100 Oak Springs Court, Clarksburg, WV. It is an apartment rental property with two buildings with four two-level units each, two single-level two-unit buildings, one single-level, five-unit building, and three buildings with six two-level units each.  It has 35 total units, five of which are FHA-covered ground-level units. It has a playground, trash dumpster facilities, and a community building with a leasing office, a fitness room, a community room, a kitchenette, bathrooms, a laundry room and a mail room. It was constructed for first occupancy in 2016. It was developed using Low-Income Housing Tax Credits and HOME funds.

60.     Reserve at Spencer is located at 8400 NE 36th Street, Spencer, OK. It is an apartment rental property with two three-level, 24-unit buildings and one single-level six-unit building. It has 54 total units, 22 of which are FHA-covered ground-level units. It has a playground, a gazebo, a picnic area, trash dumpster facilities, and a clubhouse with a leasing office, a fitness center, a computer center, a multi-purpose room, a kitchen, a laundry room, bathrooms and a mail room. It was constructed for first occupancy in 2015. It was developed using Low-Income Housing Tax Credits.

61.     River Crossing is located at 8030 Sycamore Creek Drive, Charlotte, NC. It is an apartment rental property with eleven three-level, 12-unit buildings. It has 132 total units, 24 of which are FHA-covered ground-level units. It has a welcome center with a leasing office, a bathroom, a laundry room, a mail center, and trash dumpster facilities. It was constructed for first occupancy in 2002.

62.     Riverside Landing at Delaware Place is located at 351 Sandusky Street, Delaware, OH. It is an apartment rental property with one four-level, 49-unit elevator building and seven single-level, two-unit buildings. Riverside Landing at Delaware Place has 63 total units, 49 of which are FHA-covered units. It has a picnic pavilion, walking trails, and trash dumpster facilities, and the elevator building contains a leasing office, common bathrooms, lounges, trash rooms, common laundry facilities, a common dining/activity room and kitchen, a fitness center, a conference room, a computer room, a storage room, a mail center and a multipurpose room. It was constructed for first occupancy in 2013. It was developed using Low-Income Housing Tax Credits.

63.     Riverview Bluffs is located at 104 River Valley Boulevard, New Richmond, OH. It is an apartment rental property with six single-level, six-unit buildings. Riverview Bluffs has 36 total units, all of which are FHA-covered ground-level units. It has a clubhouse with a leasing office, bathrooms, laundry facilities, a community room, a computer room, and a mail center. It was constructed for first

occupancy in 2007. It was developed using Low-Income Housing Tax Credits, HOME funds, and loans from the Section 538 Program.

64.     Sandhurst is located at 3139 Sandhurst Drive, Zanesville, OH. It is an apartment rental property with ten three-level, 12-unit buildings. It has 120 total units, 40 of which are FHA-covered ground-level units. It has a welcome center with a leasing office, a bathroom, a computer area, common laundry facilities, and mail areas. It was constructed for first occupancy in 2002.

65.     Scioto Woods I is located at 2097 Western Avenue, Chillicothe, OH. It is an apartment rental property with six three-level, 12-unit buildings. It has 72 total units, 24 of which are FHA-covered ground-level units. It has common laundry facilities and mail areas, a playground, and trash dumpster facilities. It was constructed for first occupancy in 1998. It was developed using Low-Income Housing Tax Credits and HOME funds.

66.     Scioto Woods II is located at 2097 Western Avenue, Chillicothe, OH. It is an apartment rental property with seven three-level, 12-unit buildings. It has 84 total units, 28 of which are FHA-covered ground-level units. It has a welcome center with a leasing office, a bathroom, a laundry room and a mail area. It was constructed for first occupancy in 2004. It was developed using Low-Income Housing Tax Credits and HOME funds.

67.     Siena Village Senior Living is located at 6045 North Main Street, Dayton, OH. It is an apartment rental property with one three-level, 108-unit elevator building. It has 108 total units, all of which are FHA-covered units. It has a leasing office, common bathrooms, common storage and laundry facilities, an activity room, a beauty shop, a TV lounge, a common dining room and kitchen, an exercise room, a billiard room, a chapel and a mail center. It was constructed for first occupancy in 1997. It was developed using Low-Income Housing Tax Credits and HOME funds.

68.     Silversage Point at Western Center is located at 1800 Western Center Boulevard, Fort Worth, TX. It is an apartment rental property with four three-level, 24-unit buildings and two three-level, 12-unit buildings. It has 120 total units, 40 of which are FHA-covered ground-level units. It has a pool, a playground, a gazebo, a picnic area, trash dumpster facilities, and a clubhouse with a leasing office, a kitchen, bathrooms, a laundry room, an activity room, a fitness room and a mail center. It was constructed for first occupancy in 2014. It was developed using Low-Income Housing Tax Credits and HOME funds.

69.     St. Bernard Commons is located at 5007 Greenlee Avenue, St. Bernard, OH. It is an apartment rental property with one three-level, 42-unit elevator building. It has 42 total units, all of which are FHA-covered units. It has a leasing office,

common bathrooms, common storage facilities, laundry facilities, trash rooms, an activity room, a community room, a mail area, and a sitting room. It was constructed for first occupancy in 2013. It was developed using Low-Income Housing Tax Credits.

70. St. Rita's Senior Housing is located at 10614 Granger Road, Garfield Heights, OH. It is an apartment rental property with one three-level, 63-unit elevator building. It has 63 total units, all of which are FHA-covered units. It has a leasing office, common bathrooms, activity rooms, common laundry facilities, trash rooms, a community room, a common kitchen, an activity room, a library, a mail room, a computer room, and a conference room. It was constructed for first occupancy in 2009. It was developed using Low-Income Housing Tax Credits.

71. Stone Creek Apartments is located at 2686 Cobble Circle, Moraine, OH. It is an apartment rental property with eleven three-level, 12-unit buildings. It has 132 total units, 44 of which are FHA-covered ground-level units. It was constructed for first occupancy in 1997.

72. Summit Pointe is located at 203 Deer Run Drive, Lawrenceburg, IN. It is an apartment rental property with six three-level, 12-unit buildings and one three-level 11-unit building with a leasing office, a community building with a fitness center and a bathroom, and a playground. It has 83 total units, 27 of which are FHA-covered ground-level units. It was constructed for first occupancy in 1995 and certain renovations were completed in 2012. It was developed using Low-Income Housing Tax Credits, HOME funds, and loans from the USDA's Rural Development Program.

73. Sycamore Creek Apartments is located at 776 Country Side Lane, Sidney, OH. It is an apartment rental property with eight three-level, 12-unit buildings. It has 96 total units, 32 of which are FHA-covered ground-level units. It has a welcome center with a leasing office, a bathroom, a computer area, common laundry facilities and mail areas, and trash dumpster facilities. It was constructed for first occupancy in 2000. It was developed using Low-Income Housing Tax Credits and HOME funds.

74. The Enclave at Winston-Salem is located at 1489 Colony Lodge Street, Winston-Salem, NC. It is an apartment rental property with 17 two-level, four-unit buildings. It has 68 total units, 34 of which are FHA-covered ground-level units. It has a picnic area, a playground, and a community building with a leasing office, bathrooms, a computer room, a kitchenette, a club room, a laundry room, a fitness center, and a mail area. It was constructed for first occupancy in 2012. It was developed using Low-Income Housing Tax Credits and HOME funds.

75. The Landings at Steele Creek I is located at 4520 Branch Bend Lane, Charlotte, NC. It is an apartment rental property with six three-level, 12-unit

buildings. It has 72 total units, 24 of which are FHA-covered ground-level units. It has trash dumpster facilities. It was constructed for first occupancy in 2002.

76. The Landings at Steele Creek II is located at 4520 Branch Bend Lane, Charlotte, NC. It is an apartment rental property with four three-level, 12-unit buildings. It has 48 total units, 16 of which are FHA-covered ground-level units. It has a leasing office. It was developed using Low-Income Housing Tax Credits. It was constructed for first occupancy in 2001.

77. Timber Glen II is located at 4486 Timber Glen Drive #8, Batavia, OH. It is an apartment rental property with six three-level, 12-unit buildings. It has 72 total units, 24 of which are FHA-covered ground-level units. It has a leasing office, common laundry facilities, mail areas, and trash dumpster facilities. It was constructed for first occupancy in 1997.

78. Timber Ridge Apartments is located at 2190 Harshman Road, Dayton, OH. It is an apartment rental property with six three-level, 12-unit buildings. It has 72 total units, 24 of which are FHA-covered ground-level units. It has a welcome center with a leasing office and a bathroom, common laundry facilities, mail areas, and trash dumpster facilities. It was constructed for first occupancy in 1997. It was developed using Low-Income Housing Tax Credits.

79. Timberlake Apartments is located at 465 Timberlake Drive, Vandalia, OH. It is an apartment rental property with 12 three-level, 12-unit buildings. It has 144 total units, 48 of which are FHA-covered ground-level units. It has a welcome center with a leasing office, a bathroom, a computer area, common laundry facilities, mail areas, a playground, and trash dumpster facilities. It was constructed for first occupancy in 2000. It was developed using Low-Income Housing Tax Credits.

80. Twin Cedars I is located at 1830 20th Avenue Drive Northeast, Hickory, NC. It is an apartment rental property with three three-level, 12-unit buildings. It has 36 total units, 12 of which are FHA-covered ground-level units. It was constructed for first occupancy in 2002.

81. Twin Cedars II is located at 1830 20th Avenue Drive Northeast, Hickory, NC. It is an apartment rental property with six three-level, 12-unit buildings. It has 72 total units, 24 of which are FHA-covered ground-level units. It has a leasing office, a playground, and trash dumpster facilities. It was constructed for first occupancy in 2001. It was developed using Low-Income Housing Tax Credits.

82. Twin Lakes Senior Villas is located at 405 Twin Lakes Drive, Rantoul, IL. It is an apartment rental property with three single-level, eight-unit buildings, one single-level, six-unit building, and three single-level, four-unit buildings. It has 42 total units, all of which are FHA-covered ground-level units. It has a picnic

pavilion, a walking trail, and a community building with a leasing office, a business center, a community room, a kitchenette, bathrooms, and a mail center. It was constructed for first occupancy in 2013. It was developed using Low-Income Housing Tax Credits.

83. Villas at Twin Cedars is located at 1866 20th Avenue Drive Northeast, Hickory, NC. It is an apartment rental property with three single-level, six-unit buildings, two single-level, five-unit buildings, and three single-level, four-unit buildings. It has 40 total units, all of which are FHA-covered ground-level units. It has a picnic area, a playground, trash dumpster facilities, and a welcome center with a leasing office, a bathroom, a laundry room, a mail center, and a meeting room. It was constructed for first occupancy in 2005. It was developed using Low-Income Housing Tax Credits.

84. Walnut Run Senior Villas is located at 105 Sunshine Drive, Cortland, OH. It is an apartment rental property with four single-level, six-unit buildings and four single-level, four-unit buildings. It has 40 total units, all of which are FHA-covered ground-level units. It has a welcome center with a leasing office, a mail center, bathrooms, a kitchenette, and a community room. It was constructed for first occupancy in 2008. It was developed using Low-Income Housing Tax Credits and loans from the Section 538 Program.

85. Walkers Ridge Apartments is located at 5000 Walkers Trail, Greensburg, PA. It is an apartment rental property with three three-level, 20-unit buildings and one three-level, 24-unit building. It has 84 total units, 32 of which are FHA-covered ground-level units. It has a playground, trash dumpster facilities, and a clubhouse with a leasing office, a computer center, laundry facilities, a community room, a kitchen, bathrooms, and a mail area. It was constructed for first occupancy in 2008. It was developed using Low-Income Housing Tax Credits and HOME funds.

86. Waterbury Apartments is located at 1150 South 14th Street, Decatur, IN. It is an apartment rental property with seven three-level, 12-unit buildings. It has 84 total units, 28 of which are FHA-covered ground-level units. It has a welcome center with a leasing office, a computer area, a meeting area, a bathroom, common laundry facilities, a playground, and trash dumpster facilities. It was constructed for first occupancy in 1999. It was developed using Low-Income Housing Tax Credits.

87. Waterstone Landing is located at 12315 Roachton Road, Perrysburg, OH. It is an apartment rental property with twelve three-level, 24-unit buildings. Waterstone Landing has 288 total units, 96 of which are FHA-covered ground-level units. It has a pool, a mail center, a dog park, a pergola, grill and picnic areas, trash dumpster facilities, and a clubhouse with a leasing office, a business center, a fitness center, a billiards room, a cinema center, and a community room. It was constructed for first occupancy in 2010.

88.     Weaver Farm Apartments (formerly known as Tamarack Trace) is located at 1000 Tamarack Circle, Florence, KY. It is an apartment rental property with 22 three-level, 12-unit buildings. It has 264 total units, 88 of which are FHA-covered ground-level units. It has a leasing office, common laundry facilities and trash dumpster facilities. It was constructed for first occupancy in 1997.

89.     Whitehouse Square Senior Villas is located at 7001 Park View Court, Whitehouse, OH. It is an apartment rental property with four single-level, eight-unit buildings. It has 32 total units, all of which are FHA-covered ground-level units. It has a community garden, a walking trail, a picnic shelter, a grilling area, and a clubhouse with a leasing office, a computer room, a TV room, a community room, a kitchenette, bathrooms, and a mail room. It was constructed for first occupancy in 2011. It was developed using Low-Income Housing Tax Credits, HOME funds, and loans from the USDA's Rural Development Program.

90.     Wind Ridge Apartments is located at 599 Wind Ridge Place, Tipp City, OH. It is an apartment rental property with seven three-level, 12-unit buildings. It has 84 total units, 28 of which are FHA-covered ground-level units. It has a welcome center with a leasing office, common laundry facilities, mail areas, and trash dumpster facilities. It was constructed for first occupancy in 1997. It was developed using Low-Income Housing Tax Credits.

91.     Windsor Place is located at 3944 Camberlee Way, Beavercreek, OH. It is an apartment rental property with six three-level, 12-unit buildings. It has 72 total units, 24 of which are FHA-covered ground-level units. It has a welcome center with a leasing office and a bathroom, common laundry facilities, mail areas, and trash dumpster facilities. It was constructed for first occupancy in 2000.

92.     Wright Place Apartments is located at 2224 High Wheel Drive, Xenia, OH. It is an apartment rental property with one three-level, 92-unit elevator building. It has 92 total units, all of which are FHA-covered units. It has a leasing office, common bathrooms, common laundry and storage facilities, a common dining room and living room, an activity room, a mail room, and a beauty salon. It was constructed for first occupancy in 2004. It was developed using Low-Income Housing Tax Credits.

93.     Prior to entry of this Consent Order, Defendants had sold or otherwise relinquished ownership, care, custody and control over some of the Subject Properties. The following properties remain in one or more Defendants' ownership, care, custody or control:

> a.     Allegheny Pointe
> b.     Riverside Landing at Delaware Place
> c.     Galena Estates

d. Gallatin Park Apartments
e. Hampshire Landing
f. Madison Place Senior Apartments
g. Meadow Vista Senior Villas
h. Pinecrest Apartments
i. Reserve at Oak Spring
j. Reserve at Spencer, LLC
k. The Enclave at Winston-Salem
l. Twin Lakes Senior Villas
m. Oak Ridge Apartments
n. Walker's Ridge
o. Silversage Point
p. Villas at Twin Cedars
q. Harmony Senior Village
r. Lake Towne Senior Village
s. Riverview Bluffs
t. St. Rita's Senior Housing
u. Whitehouse Square Senior Village
v. Summit Pointe Apartments
w. Faith Community Housing
x. Meadow Creek Apartments
y. The Landings at Steele Creek I
z. The Landings at Steele Creek II
aa. Carriage Trails Senior Village
bb. Mercy Siena Senior Living
cc. Honey Creek
dd. Deerfield Crossings
ee. Mallard Landing
ff. Mill Pond
gg. Sandhurst
hh. Twin Cedars I
ii. Twin Cedars II
jj. Windsor Place
kk. Waterstone Landing
ll. Scioto Woods II
mm. Indian Trace II
nn. Indian Trace I

## F. Consent of the Parties to this Order

94. Defendants agree to address alleged deficiencies at the Subject Properties as required by this Consent Order and in accordance with the terms set forth in this Consent Order and as required by the separately agreed upon remediation protocols described herein.

95. The parties agree that this Court has jurisdiction over the subject matter of this case under 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 3614(a) and 12188(b)(1)(B). The parties further agree that this controversy should be resolved without further proceedings and without an evidentiary hearing or a trial.

96. As indicated by the signatures appearing below, the parties agree to the entry of this Order.

**It is hereby ORDERED, ADJUDGED, and DECREED:**

## II. GENERAL INJUNCTION

97. Defendants and each of their officers, employees, agents, successors and assigns, and all other persons in active concert or participation with them are enjoined from discriminating on the basis of disability as prohibited by the FHA, 42 U.S.C. §§ 3604(f)(1)–(3), and the ADA, 42 U.S.C. §§ 12182(a) and 12183(a)(1).

98. Defendants and each of their officers, employees, agents, successors and assigns, and all other persons in active concert or participation with them are enjoined from interfering or preventing the retrofitting ordered herein or the implementation or completion of this Order. As to the Subject Properties the Defendants own or control, and to the extent Defendants are able to procure access to the other Subject Properties no longer owned or controlled by Defendants, Defendants agree to allow access to the public and common use areas of the Subject Properties, and, to the extent possible, access to unit interiors at the Subject Properties, for the purpose of planning, evaluating, and performing any action required under this Order to perform retrofits to the public and common use areas and the unit interiors as set forth in the separately agreed upon remediation protocols, and for the purpose of interviewing or meeting with residents or tenants to aid in the implementation or completion of this Order.

## III. SURVEYING OF SUBJECT PROPERTIES

99. Subject to the provisions of Paragraph 98, above, and Paragraph 103, below, Defendants agree to take the following actions with regard to the surveying of the Subject Properties the Defendants own or control, and to the extent Defendants are provided access to the other Subject Properties:

    a. Within sixty (60) days of the entry of this Order, Defendants shall contract with one or more qualified professionals, hereinafter the "Properties Surveyors," approved by the United States, to conduct an on-site survey in accordance with this Section, and identify elements for remediation based upon the separately agreed upon Remediation

Protocol. The Properties Surveyors will have expertise in the Accessible Design Requirements of the FHA and the accessibility requirements of the FHA Guidelines, the ADA Standards, ANSI A117.1-1986, and UFAS.

b. All surveys are to be completed within six (6) months of the date of the entry of this Order.

c. Defendants shall give the United States written notice of the survey at least twenty-one (21) days prior to each survey and shall give the United States an opportunity to have its representatives present for each survey.

d. The surveys are to be conducted in accordance with the separately agreed upon Remediation Protocol, which shall be provided to the Properties Surveyor(s).

100. The Properties Surveyor(s) will prepare a written Property Survey Report for each Subject Property surveyed (a "Surveyed Subject Property"). Each Property Survey Report will comply with the following provisions:

a. The Property Survey Report will specify the scope and methodology of the survey.

b. The Property Survey Report will set forth the elements which the Surveyor identifies, based upon the separately agreed upon Remediation Protocol, that are to be remediated.

c. The Properties Surveyors will take digital photographs of the measurements taken of the elements the Surveyor identifies, based upon the Remediation Protocol, that are to be remediated. These photographs shall be included in the report and made a part of each Property Survey Report and made available in electronic digital form as an appendix to the Property Survey Report.

d. The Properties Surveyor will send the Property Survey Report of each Surveyed Subject Property to counsel for the United States and Defendants as soon as practicable following each survey, but in any event no later than sixty (60) days after the date of the survey.

e. Neither the United States nor the Defendants shall disclose the Property Survey Reports to any other person, except that Defendants may disclose the Property Survey Reports to their respective lenders, owners, state housing finance agencies, contractors who make retrofits,

future bona fide purchasers, insurance representatives and carriers, or as specifically required by Court order, and that the United States may disclose the Property Survey Reports to any agent or consultant retained by the United States.

## IV. RETROFITS AT SUBJECT PROPERTIES

101.    For each Subject Property at which a Properties Surveyor has identified elements, based upon the Remediation Protocol, that are deemed, under the terms of this Order, to require remediation, the provisions in Sections IV–VII shall apply. The financial responsibility for effecting any and all retrofits required under this Order to the Subject Properties, and the cost of surveys and inspections associated therewith, shall be solely that of the Defendant(s) identified as responsible for the specific Subject Property as set forth in <u>Appendix A</u>.[3] Each Defendant represents and warrants that it has the financial capacity to complete all of the retrofits for which it has responsibility as set forth in Appendix A pursuant to the terms and timetables set forth in this Order.

## A.    Access to Subject Properties

102.    The Defendants that own, control, or were otherwise associated with the design or construction of a Subject Property, as reflected on <u>Appendix A</u>, agree to allow access to the public and common use areas of the Subject Property and access to the Subject Property covered multifamily dwelling unit interiors, for the purpose of performing any surveys and subsequent retrofitting required under this Order, and for the purpose of interviewing or meeting with residents at a Subject Property to aid in the implementation or completion of this Order.

103.    Where a Subject Property is not owned or controlled by a Defendant, Defendants identified as responsible for the specific Subject Property as set forth in <u>Appendix A</u> shall use good faith efforts, including the use of at least two written notices substantially in the form of <u>Appendix B</u>, to obtain consent to access the public and common use areas of the Subject Property and access the Subject Property

---

[3] The parties recognize that the construction of certain properties was subsidized by Low-Income Housing Tax Credits. Such properties are subject to the applicable Section 42 regulations; investor, lender, or third party guarantees and contract requirements; related land use covenants or requirements; or the associated Land Use Restriction Agreement. While the parties do not anticipate that these regulations will impact any retrofits required by this Order, in the event it is discovered that a retrofit may negatively affect the tax credit status of a property or unit, the parties will meet and confer. If it is determined that the retrofit would impact tax-credit status, the parties will, in good faith, seek alternative accessibility modifications to reasonably mitigate the circumstance or other steps for reasonable accommodation or other accessibility remedies in light of the overall objectives of the Fair Housing Act and Americans with Disabilities Act.

covered multifamily dwelling unit interiors, for the purpose of performing any surveys and subsequent retrofitting required under this Order, and for the purpose of interviewing or meeting with residents at a Subject Property to aid in the implementation or completion of this Order. Defendants shall provide the United States with copies of the written notices within five (5) days of having sent them. If Defendants, within three (3) months from the date of this Order, are unable to obtain access to a Subject Property despite having undertaken the efforts described above, Defendants shall provide a report to the United States of efforts undertaken and specific reasons why Defendants have been unable to obtain access. The United States shall have one (1) year from the date of receiving such report to file appropriate action or otherwise move the Court for appropriate relief to obtain access to the properties. Defendants shall join in such motion or action as reasonably required provided it is timely filed by the United States.

104.    Defendants shall endeavor in good faith to enable the retrofits at the Subject Properties not under their ownership and control and shall keep the United States apprised of any issues related to the surveying or retrofit work. Where a Subject Property is not owned or controlled by a Defendant, and where Defendants have obtained access to the Subject Property, (a) any and all timelines or deadlines shall be established from the date such access is granted, and (b) if a dispute arises with an entity that owns or controls the property regarding any retrofitting required under this Order, the Defendants shall notify the United States within thirty (30) days from the date the Defendants have determined that impasse has been reached. If such notification is provided, the parties shall confer, and to the extent the parties are unable to reach a resolution, the Defendants or the United States may move the Court for appropriate relief. As set forth in the Remediation Protocol, the Defendants shall not be responsible for current conditions at a Subject Property where it can be demonstrated that the non-compliant condition is, or was caused by, a Subsequent Modification, as that term is defined in the Remediation Protocol.

105.    Subject to the provisions set forth herein regarding ownership and control of Subject Properties, Defendants shall not be relieved of their respective obligations to seek access to the Subject Properties or to retrofit any Subject Property as required by this Order, including those properties not currently owned or controlled by a Defendant, unless relieved by the Court or by the written agreement of the parties.

106.    Nothing in this Order shall preclude the United States from making its own efforts to obtain access to any Subject Property or any Subject Property covered multifamily dwelling unit interiors, for the purpose of performing any retrofitting required under this Order, and for the purpose of interviewing or meeting with residents at a Subject Property to aid in the implementation or completion of this Order.

**B.     Agreement on Retrofits at Subject Properties**

107.    The United States and the Defendants shall, within ninety (90) days of receiving the Initial Property Survey Report, provide a list of objections to the Initial Property Survey Report to the Properties Surveyor. If both parties fail to provide notice of objections to the Initial Property Survey Report, the Initial Property Survey Report will be deemed accepted by all parties and will become the Final Property Survey Report and the Defendants need only retrofit the elements included in the Final Property Survey Report. If either party or both parties provide notice of objections, the Properties Surveyor shall respond with a Final Property Survey Report within thirty (30) days. The parties agree to abide by the conclusions of the Properties Surveyor in the Final Property Survey Report.

**C.     General Retrofits to Accessible Routes at Surveyed Subject Properties**

108.    No later than twenty-four (24) months from the date of the applicable Final Property Survey Report on retrofits to the accessible routes at each Surveyed Subject Property as set forth in Paragraph 107, the Defendants identified as responsible for the Subject Property in Appendix A (subject to Paragraphs 103-105) will complete the agreed retrofits to the accessible routes at that Subject Property.

**D.     Retrofits to Public and Common Use Areas of Subject Properties**

109.    No later than twenty-four (24) months from the date of the applicable Final Property Survey report on retrofits to public and common use areas at each Surveyed Subject Property as set forth in Paragraph 107, the Defendants identified as responsible for the Subject Property in Appendix A (subject to Paragraphs 103-105) will complete the agreed retrofits to the public and common use areas at that Subject Property.

**E.     Retrofits to Covered Multifamily Dwelling Unit Interiors at Subject Properties**

110.    No later than thirty-six (36) months from the date of the applicable Final Property Survey Report on retrofits to covered multifamily dwelling unit interiors of a Surveyed Subject Property as set forth in Paragraph 107, the Defendants identified as responsible for the Subject Property in Appendix A (subject to Paragraphs 103-105) will complete the agreed retrofits to the covered multifamily dwelling unit interiors at that Subject Property. Retrofits to occupied units will be done upon unit turnover whenever possible.

111.  Within thirty (30) days from the date of the applicable Final Property Survey Report, the Defendants identified as responsible for the Subject Property in Appendix A (subject to Paragraphs 103-105) shall provide a notice that is substantially equivalent to Appendix C to the current residents in covered multifamily dwelling units at the Subject Property. The notice shall inform Subject Property residents that (1) to settle this lawsuit, the Defendants have agreed to perform certain retrofits to covered units; (2) the unit must be retrofitted within three (3) years; (3) the retrofits will be completed after the resident's tenancy ends or upon unit turn-over, or the resident can schedule the retrofits; (4) the retrofits will be performed at no cost to the resident; and (5) temporary relocation will be provided to the resident, if necessary, while the retrofits are completed, or if temporary relocation is unavailable, a payment equivalent to the U.S. General Services Administration rate will be provided to the resident for temporary relocation expenses incurred by the resident, as required by Section V of this Order, infra. The Defendants shall certify to the United States in writing that these notices have been distributed and the manner in which they were distributed within ten (10) days after such distribution.

112.  Subject Property residents may request, in writing, that retrofits to covered dwelling units required by the Final Property Survey Report be performed on an expedited basis, and the requests shall be granted by Defendants on a first-come, first-served basis. Defendants shall complete the retrofits as promptly as practical, subject to delays due to circumstances beyond Defendants' control including but not limited to labor and/or supply disputes or shortages or inclement weather, but not later than forty-five (45) days from the date on which the Defendants receive the request from the resident, with such deadline being subject to Paragraph 145, below, of this Order.

## V. INCONVENIENCE AND OVERNIGHT STAYS FOR RETROFITTING COVERED MULTIFAMILY DWELLING UNIT INTERIORS AT SUBJECT PROPERTIES

113.  Defendants shall endeavor to minimize inconvenience to residents in scheduling and performing retrofits required by this Order to covered multifamily dwelling unit interiors at the Subject Properties.

114.  If a resident at a Subject Property scheduled to undergo a retrofit will be dislocated from the unit for more than twenty-four (24) hours consecutively, Defendants involved in the design and construction of a Subject Property shall relocate the resident to another available unit in the development or, if no such unit is available, pay the resident the U.S. General Services Administration rate for temporary relocation expenses incurred by the resident. Such payment shall be made prior to the commencement of any retrofit work on the resident's unit, so that the

resident or owner may use the money to obtain alternative living accommodations and obtain food while dislocated.

## VI. NOTICE OF RETROFITS TO PUBLIC AND COMMON USE AREAS AT SUBJECT PROPERTIES

115.   Within thirty (30) days of the date of the applicable Final Property Survey Report, the Defendants shall provide written notice to all current residents at each Subject Property stating that the retrofits required by this Order will be performed to the public and common use areas of the Subject Properties, which include unit entrances and accessible routes. Such notice shall conform to <u>Appendix H</u>. Defendants shall certify to the United States in writing that the notices have been distributed and the manner in which they were distributed within ten (10) days after such distribution.

## VII. NEUTRAL INSPECTOR AT SUBJECT PROPERTIES

116.   Defendants involved in the design and construction of a Subject Property shall enter into a contract with one or more neutral inspectors approved by the United States ("Surveyed Properties Inspector") to conduct on-site inspections of the retrofits at the Surveyed Subject Properties that have been performed under this Order to determine whether the retrofits have been completed in accord with the specifications in this Order. The Surveyed Properties Inspector shall have expertise in the Accessible Design Requirements of the FHA and the accessibility and adaptability requirements of the Guidelines, the ADA, the ADA Standards, ANSI A117.1-1986, and UFAS.

117.   An inspection of a Subject Property shall take place within thirty (30) days of the completion of all of the retrofits to covered multifamily dwelling unit interiors and the public and common use areas at that Subject Property. Defendants involved in the design and construction of that Surveyed Subject Property shall give the United States at least three (3) weeks' notice of the inspection and shall give the United States an opportunity to have its representatives present for the inspection.

118.   The Surveyed Properties Inspector shall set out the results of each inspection of the Subject Property, including any failure to make the retrofits required by the Remediation Protocol, if any, in writing, and shall send that report to counsel for Defendants and counsel for the United States. If the inspection indicates that not all the required retrofits agreed upon by the parties in the Remediation Protocol have been made at the Subject Property, Defendants shall correct any deficiencies within sixty (60) days and Defendants shall pay for another inspection by the same Surveyed Properties Inspector to certify that the deficiencies have been corrected. This process shall continue until the Surveyed Properties Inspector certifies that all the required retrofits have been made at each Subject Property.

Defendants shall pay all the Surveyed Properties Inspector's reasonable costs associated with these inspections of the Subject Property, and such payments shall be made without regard to the Surveyed Properties Inspector's findings. Upon reasonable notice to Defendants, representatives of the United States shall be permitted to inspect the retrofits made by Defendants in accordance with this Order and the Surveyed Properties Inspector's inspection reports provided for in this Order, to ensure compliance; provided, however, that the United States shall endeavor to minimize any inconvenience caused by such inspections.

## VIII. TRANSFER OF INTEREST IN SUBJECT PROPERTIES

119.    The sale, foreclosure, or any other transfer of ownership, in whole or in part, whether voluntary or involuntary, during the effective period of the Consent Order, which shall include any extensions to the term of the Consent Order, of any of the Subject Properties shall not affect Defendants' continuing obligation to retrofit any Subject Property as specified in this Order. Should a Defendant sell or transfer ownership of any Subject Property, in whole or in part, or any portion thereof, prior to the completion of the retrofits specified in Sections IV and Section VII of this Order, the Defendant will, at least thirty (30) days prior to completion of the sale or transfer: (a) provide to each prospective buyer written notice that the Subject Property is subject to this Order, including specifically the Defendant's obligations to complete required retrofit work and to allow inspections, along with a copy of this Order; and (b) provide to the United States, by e-mail and first-class mail, written notice of the intent to sell or transfer ownership, along with a copy of the notice sent to each buyer or transferee, and each buyer's or transferee's name, address and telephone number.

## IX. NO RAISING RENT PRICES

120.    Defendants with an ownership or management interest in a Subject Property, their agents and affiliated companies, may not raise the rent price of any dwelling unit or demand any deposit or other fee for a dwelling unit at any Subject Property solely because of contemplated or completed retrofits pursuant to this Order in a dwelling unit.

## X. NON-DISCRIMINATION IN FUTURE DESIGN AND CONSTRUCTION

121.    For the duration of the Consent Order, Defendants will maintain and provide to the United States the following information and statements regarding multi-family, residential properties under construction as of August 3, 2016, or constructed after August 3, 2016, and any other covered multifamily, residential dwellings intended to be, or which actually are, developed, built, designed, constructed, or engineered in whole or in part, by any of them or by any entities in which they have a position of control as an officer, director, member, or manager, or have a ten-percent (10%) or larger ownership share, provided, however, that such

29

information and statements need to be maintained and/or provided only on properties in which a Defendant is actually involved, not on those properties in which a Defendant bids or expresses an interest, but does not become finally involved:

a.   The name and address of the multi-family, residential property;

b.   A description of the property and the individual units;

c.   The name, address, and telephone number of the civil engineer(s) involved with the project;

d.   To the extent in Defendants' possession or reasonably able to be obtained, a statement from the civil engineer(s) involved with the property acknowledging and describing his/her knowledge of and training in the requirements of the FHA and the ADA and in the field of accessible site design and certifying that he/she has reviewed the engineering documents for the project and that the design specifications therein fully comply with the requirements of the FHA, the FHA Guidelines, the ADA, the ADA Standards, ANSI A117.1-1986, and UFAS;

e.   The name, address and telephone number of the architect(s) involved with the property;

f.   To the extent in Defendants' possession or reasonably able to be obtained, a statement from all architect(s) involved with the property acknowledging and describing his/her knowledge of and training in the Accessible Design Requirements of the FHA, 42 U.S.C. §§ 3406(f)(1), (f)(2), and (f)(3)(C), the requirements of the FHA Guidelines, the ADA, 42 U.S.C. § 12183(a)(1), the ADA Standards, and in the field of accessible site design and certifying that he/she has reviewed the architectural plans for the property and that the design specifications therein fully comply with the requirements of the Act, the FHA Guidelines, the ADA, the ADA Standards, ANSI A117.1-1986, and UFAS;

g.   If the engineering documents or architectural plans are revised, and the revisions could have any impact on the accessibility of the dwellings or property, each of Defendants will obtain, maintain, and provide to the United States upon request, and to the extent in Defendants' possession or reasonably able to be obtained, a statement from the civil engineer(s) or architect(s) involved with the property that all specifications in the revised engineering documents or architectural plans, as pertinent, comply with the Accessible Design Requirements of the FHA and the FHA Guidelines, and the Americans with Disabilities Act, the ADA Standards, ANSI A117.1-1986, and UFAS, where applicable.

122.   Within three (3) years from the date of this Order, Defendants will take all actions to make all multi-family, residential properties that Defendants have ownership or control over and that were under construction as of August 3, 2016, or

constructed after August 3, 2016, or any future multi-family, residential construction within the meaning of Paragraph 121, compliant with the Accessible Design Requirements of the FHA, the FHA Guidelines, the ADA, and the ADA Accessibility Standards. Upon reasonable notice during the three (3) year period from entry of this Order, and provided Defendants have ownership or control of the future constructed properties identified herein, the United States will be permitted full access to such properties to inspect for compliance with the FHA, FHA Guidelines, ADA, ADA Standards, and if applicable, UFAS.

## XI. SETTLEMENT FUND AND PAYMENTS TO AGGRIEVED PERSONS

123. Within sixty (60) days of the entry of this Order, Defendants shall deposit in an interest-bearing account the total sum of FOUR HUNDRED THOUSAND DOLLARS ($400,000.00) for the purpose of compensating any aggrieved persons who may have suffered harm as a result of the alleged discriminatory housing practices by Defendants. This money shall be referred to as the "Settlement Fund," and shall be for the purpose of compensating any aggrieved persons who may have suffered harm as a result of the alleged discriminatory housing practices by Defendants.

124. Within sixty (60) days of the entry of this Order, Defendants shall publish the Notice to Potential Victims of Alleged Housing Discrimination ("Notice") at Appendix D informing readers of the availability of compensatory funds. The Notice shall be no smaller than three columns by six inches and shall be published on three occasions in newspapers of general circulation serving each locality in which a Subject Property is located. The publication dates shall be separated from one another by twenty-one (21) days, and at least two of the publication dates shall be on a Sunday. Within ten (10) days of each publication date, Defendants shall provide the newspaper containing the Notice to counsel for the United States.

125. Within sixty (60) days of the entry of this Order, Defendants shall send a copy of the Notice to each of the following organizations listed in Appendix I.

126. Within six (6) months of the entry of this Order, Defendants shall send, by first-class mail, postage pre-paid, a copy of the Notice to each past or present tenant who resided at a Subject Property in the five (5) years preceding the execution date of this Consent Order for which they have records. Defendants will have complied with the requirements of this paragraph by mailing such notice to the last known forwarding address provided to the owners or managers of the Subject Properties or their agents by the former tenant at the time the former tenant moved out. Within seven (7) months of entry of this Order, Defendants shall provide to counsel for the United States proof that the Notices have been sent.

127. Allegedly aggrieved persons shall have twelve (12) months from the date of the entry of this Order to contact the United States. The United States shall

31

investigate the claims of allegedly aggrieved persons and make a preliminary determination of which persons are aggrieved and whether any amount of damages should be paid to each such person. The preliminary determinations of the appropriate amount of damages shall total no more than FOUR HUNDRED THOUSAND DOLLARS ($400,000.00), and shall not include any interest that has accrued in the account. The United States will inform Defendants, in writing, of its preliminary determinations, and provide a copy of a sworn declaration from each allegedly aggrieved person setting forth the factual basis of the claim. Defendants shall have thirty (30) days to review the declarations and provide to the United States any comments, documents or information that they believe may refute the claim.

128. The United States shall submit its final recommendations to the Court for approval, together with a copy of the declarations and any additional information submitted by Defendants. The final recommendations by the United States shall not total more than FOUR HUNDRED THOUSAND DOLLARS ($400,000.00), and shall not include any interest that has accrued in the account. When the Court issues an order approving or changing the United States' proposed distribution of funds for allegedly aggrieved persons, Defendants, within ten (10) days of the Court's order, shall deliver to the United States checks payable to the allegedly aggrieved persons in the amounts approved by the Court, plus a proportionate share of the interest that has accrued in the Settlement Fund as of the day before the checks are sent to the United States. In no event shall the aggregate of all such checks exceed the sum of the Settlement Fund, including accrued interest. No allegedly aggrieved person shall be paid until he/she has executed and delivered to counsel for the United States the release at Appendix E.

129. After the satisfaction of Paragraphs 123-128, above, and the expiration of the corresponding time periods and subject to any extensions as provided by Paragraph 145, any money remaining in the Settlement Fund, including interest, shall be distributed to the United States Treasury in the form of an electronic funds transfer based on written instructions to be provided by the United States.

130. Defendants shall permit the United States, upon reasonable notice, to review any records that may reasonably facilitate its determinations regarding the claims of alleged aggrieved persons.

131. Nothing in this Order shall preclude the United States from making its own efforts to locate and provide notice to potential aggrieved persons.

## XII. CIVIL PENALTY

132. Within fifteen (15) days of the entry of this Order, the following Defendant shall be responsible for paying a civil penalty on behalf of all Defendants of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00) under 42 U.S.C.

§ 3614(d)(1)(C) and 42 U.S.C. § 12188(b)(2)(C)(i) to vindicate the public interest: Miller-Valentine Apartments II Ltd. This payment shall be in the form of an electronic funds transfer in accordance with written instructions to be provided by the United States. The civil penalty is a debt for a fine, penalty, or forfeiture payable to and for the benefit of the United States within the meaning of 11 U.S.C. § 523(a)(7), and is not compensation for actual pecuniary loss. No Defendant shall seek to discharge any part of this debt in bankruptcy.

## XIII. EDUCATIONAL PROGRAM

133.     Within thirty (30) days of the entry of this Order, Defendants will provide a copy of this Order to all their agents and employees involved in the design or construction of the Subject Properties and secure the signed statement from each agent or employee acknowledging that he or she has received and read the Order, and has had an opportunity to have questions about the Order answered. This statement will be substantially similar to the form of <u>Appendix F</u>.

134.     Within thirty (30) days after the date he or she commences an agency or employment relationship with a Defendant, each new agent or employee involved in the design and construction of any Subject Property or other covered multifamily dwelling property will be given a copy of this Order and be required to sign the statement acknowledging that he or she has received and read the Order, and has had an opportunity to have questions about the Order answered. This statement will be substantially similar to the form of <u>Appendix F</u>.

135.     Defendants will also ensure that they and their employees and agents who have primary management authority over the design and/or construction of covered multifamily dwellings have a copy of, are familiar with, and personally review, the Fair Housing Accessibility Guidelines, 56 Fed. Reg. 9472 (1991) and the United States Department of Housing and Urban Development, <u>Fair Housing Act Design Manual</u>, <u>A Manual to Assist Builders in Meeting the Accessibility Requirements of the Fair Housing Act</u>, (August 1996, Rev. April 1998). Defendants and all employees and agents whose duties, in whole or in part, involve the management, sale and/or rental of multifamily dwellings at issue in this case will be informed of those portions of the FHA that relate to accessibility requirements, reasonable accommodations and reasonable modifications.

136.     Within ninety (90) days of the entry of this Order, Defendants and all their employees and agents whose duties, in whole or in part, involve or will involve primary management authority over the development, design and/or construction of multifamily dwellings will undergo training on the design and construction requirements of the FHA and the ADA. The training will be conducted by a qualified individual unconnected to the Defendants or the Defendants' attorneys who has been previously approved by the Department of Justice, and any expenses associated with

this training will be borne by Defendants. Defendants will provide to the United States, within thirty (30) days after the training, the name(s), address(es) and telephone number(s) of the trainer(s); copies of the training outlines and any materials distributed by the trainers; and certifications executed by all Defendants and covered employees and agents confirming their attendance, in a form substantially equivalent to Appendix G.

## XIV. NOTICE OF DEFENDANTS' NON-DISCRIMINATION POLICY

137.    Within ten (10) days of the entry of this Order, Defendants with an ownership or management interest in a covered multifamily dwelling property will post and prominently display in the sales or rental offices of all covered multifamily dwellings owned or operated by them a sign no smaller than 10 inches by 14 inches indicating that all dwellings are available for rental on a nondiscriminatory basis. A poster that comports with 24 C.F.R. Part 110 will satisfy this requirement.

138.    In all future advertising in newspapers, electronic media, pamphlets, brochures and other promotional literature regarding the Subject Properties or any new covered multifamily dwelling properties that any Defendant may develop or construct, such Defendant will place, in a conspicuous location, a statement that the dwelling units include features for persons with disabilities required by the federal Fair Housing Act.

## XV. NOTIFICATION AND DOCUMENT RETENTION REQUIREMENTS

139.    In addition to all other reporting required herein, within one hundred eighty (180) days of the entry of this Order, Defendants will submit to the United States an initial report containing the reporting required by Section X, detailing their compliance with Sections XIII and XIV, and containing the signed statements of Defendants and their employees and agents who have completed the training program specified in Paragraph 136 of this Order. Thereafter Defendants will, on a quarterly basis, submit to the United States a compliance report detailing the retrofitting and inspections of the retrofits at the Subject Properties. In addition, on the anniversary of the entry of this Order, the Defendants will submit to the United States a report for the reporting required by Paragraphs 121–122 on the current and future design and construction, and containing the signed statements of new employees and agents that, in accordance with Paragraph 134 of this Order, they have received and read the Order, and had an opportunity to have questions about the Order answered, except that the last compliance report will be due sixty (60) days prior to the anniversary.

140.    Defendants will advise the United States in writing within fifteen (15) days of receipt of any written administrative or legal fair housing complaint against any property owned or managed by them, or against any employees or agents of

Defendants working at or for any such property, regarding discrimination on the basis of disability in housing. Upon reasonable notice, Defendants will also provide the United States all information it may request concerning any such complaint. Defendants will also advise counsel for the United States, in writing, within fifteen (15) days of the resolution of any complaint.

141. Defendants are required to preserve all records related to this Order, related to the Subject Properties and related to any other covered multifamily dwellings designed, constructed, owned, operated, or acquired by them during the duration of this Order. Upon reasonable notice to Defendants, representatives of the United States will be permitted to inspect and copy any records of Defendants or inspect any properties or dwelling units under the control of Defendants bearing on compliance with this Order at any and all reasonable times, provided, however, that the United States will endeavor to minimize any inconvenience to Defendants and residents from such inspections.

## XVI. DURATION OF CONSENT ORDER AND TERMINATION OF LEGAL ACTION

142. This Order will remain in effect for three (3) years after the date of its entry, or until six (6) months after the Surveyed Properties Inspector has certified that all the retrofits required by this Order have been completed, whichever date is later, and the Court will retain jurisdiction to enforce this Order. By consenting to entry of this Order, the parties agree that in the event that a Defendant engages in any future conduct occurring after entry of this Order that leads to a determination of a violation of the FHA, such conduct will constitute a "subsequent violation" under 42 U.S.C. § 3614(d)(1)(C)(ii) solely against the Defendant who engages in such conduct. By consenting to entry of this Order, the parties agree that in the event that a Defendant engages in any future violation(s) of the ADA, such violation(s) will constitute a "subsequent violation" under 42 U.S.C. § 12188(b)(2)(C)(ii) solely against the Defendant who engages in such conduct.

143. The Court will retain jurisdiction for the duration of this Order to enforce the terms of the Order, at which time the case will be dismissed with prejudice. Either the United States or Defendants may move the Court to extend the duration of the Order in the interests of justice.

144. All parties will endeavor, in good faith, to resolve informally any differences regarding interpretation of and compliance with this Order prior to bringing such matters to the Court for resolution. However, in the event of a failure by a Defendant to perform, in a timely manner, any act required by this Order or otherwise for their failure to act in conformance with any provision thereof, the United States may move this Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance of such act or

deeming such act to have been performed, and an award of any damages, costs, and reasonable attorney's fees which may have been occasioned by the violation or failure to perform.

## XVII. TIME FOR PERFORMANCE

145.    Any time limits for performance imposed by this Order may be extended by the mutual written agreement of the United States and the relevant Defendants.

## XVIII. RELEASE OF LITIGATION HOLDS

146.    The parties agree that, as of the date of entry of this Order, litigation is not "reasonably foreseeable" concerning the subject matter of the United States' complaint. To the extent that any of the parties previously implemented a litigation hold to preserve documents, electronically stored information, or things related to the matters described herein, the party is no longer required to maintain such a litigation hold. Nothing in this paragraph relieves the parties of any other obligation imposed by this Order.

## XIX. RELEASE OF CLAIMS

147.    The United States hereby releases and forever discharges Defendants and Defendants' parent entities, subsidiaries, franchisees and affiliates, as well as the officers, directors, members, partners, managers, trustees, employees of those entities, including in their individual capacity named in this action ("Defendant Entities") from any and all liability for any claims, legal or equitable, the United States may have against them arising from or related to the FHA and ADA allegations in the United States' Complaint (filed 5/9/19) as of the date of the entry of this Consent Order, except that nothing in this paragraph shall prevent or limit the United States from fulfilling its obligations under 42 U.S.C. § 3612(o). Upon the expiration of this Order, as set forth under Paragraph 142, the release under this paragraph shall extend and apply to all Defendant Entities to the extent arising from or related to the design and construction projects referenced under Section X under the FHA and ADA. This paragraph shall survive the expiration of this Consent Order.

## XX. MISCELLANEOUS

148.    Given the ongoing national pandemic, all obligations tied to the entry of this Consent Order under Sections III through Section VII (and correspondingly all subsequent obligations), shall be extended until December 1, 2020.

149.    Defendants agree that this Consent Order shall not affect, alter, or modify the obligations owed amongst the Defendants contained in agreements among the Defendants concerning the allocation of costs and responsibilities for completing

retrofits at the Subject Properties or of other payments required by the Consent Order. Defendants also agree that the provisions and obligations as set forth in this Consent Order, the addenda hereto, and retrofit protocols are not affected, altered, or limited in any way by any separate agreements among the Defendants concerning the allocation of costs and responsibilities for completing retrofits at the Subject Properties or of other payments required by the Consent Order.

Dated: August 27, 2020

_____
Douglas R. Cole
United States District Judge


*FOR THE UNITED STATES:*

DAVID M. DEVILLERS
United States Attorney
Southern District of Ohio

s/ Mark D'Alessandro
MARK D'ALESSANDRO
Civil Chief
MATTHEW J. HORWITZ
Assistant United States Attorney
United States Attorney's Office
Southern District of Ohio
221 E. Fourth Street, Suite 400
Cincinnati, OH 45202
Tel. (513) 684-6823
matthew.horwitz@usdoj.gov

ERIC S. DREIBAND
Assistant Attorney General
Civil Rights Division

s/ Sameena Shina Majeed
SAMEENA SHINA MAJEED
Chief

s/ Ryan G. Lee
MICHAEL S. MAURER
Deputy Chief
RYAN G. LEE
KATHERINE A. RAIMONDO
Trial Attorneys
U.S. Department of Justice
Civil Rights Division
Housing and Civil Enforcement
Section
4 Constitution Square
150 M Street, NE, 8th Floor
Washington, DC 20530
Tel.: (202) 305-3109
Fax: (202) 514-1116
ryan.lee@usdoj.gov

*FOR DEFENDANTS:*

s/ Scott P. Moore
SCOTT P. MOORE
Baird Holm LLP
1700 Farnam Street
Suite 1500
Omaha, NE 68102-2068
www.bairdholm.com

s/ Laura Lawless
LAURA LAWLESS
Squire Patton Boggs LLP
1 East Washington Street
Suite 2700
Phoenix, AZ 85004
602-528-4137
Email: laura.lawless@squirepb.com

s/ Kimberly Ann Kyle
KIMBERLY ANN KYLE
Kohnen & Patton
PNC Center
201 East Fifth Street
Suite 800
Cincinnati, OH 45202
513-381-0656
Email: kkyle@kplaw.com

s/ Rafe Petersen
RAFE PETERSEN
Holland & Knight, LLP
800 17th Street, NW
Suite 1100
Washington, DC 20006
202-419-2481
Email: rafe.petersen@hklaw.com

# APPENDIX A

## Consent Order, *United States* v. *Miller-Valentine Operations, Inc., et al.,* No. 1:19-cv-346 (S.D. Ohio)

| Subject Property | Address | Affiliated Defendants |
|---|---|---|
| 1. Allegheny Pointe | 662 Cedar Ridge Drive, Apollo, PA  15613 | Allegheny Pointe Limited Partnership; MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 2. Aspen Grove Apartments | 1925 Aaron Drive, Middletown, OH  45044 | MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 3. Bent Tree Apartments I | 1240 Garbry Road, Piqua, OH  45356 | MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 4. Bent Tree Apartments II | 1240 Garbry Road, Piqua, OH  45356 | MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 5. Breckenridge Apartments | 2070 Breckenridge Road, Findlay, OH 45840 | MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 6. Bridge Street Landing | 1920 North Bridge Street, Chillicothe, OH 45601 | MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 7. Brookdale Trillium Crossing (fka Trillium Place) | 3500 Trillium Crossing, Columbus, OH 43235 | MVO Holdings LLC; MV Commercial Construction LLC |
| 8. Brookstone Apartments | 500 Gunntown Road, Bellefontaine, OH  43311 | MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 9. Carriage Trails Senior Villas | 1000 Waterside Circle, Huber Heights, OH 45371 | Carriage Trails Senior Village, LLC.; MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 10. Cedar Trail | 1832 Surrey Trail, Bellbrook, OH  45305 | MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |

| | | |
|---|---|---|
| 11. Cedar Wood Apartments | 478 East Cook Road, Mansfield, OH  44903 | MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 12. Cobblegate Square Apartments | 2686 Cobble Circle, Moraine, OH  45439 | MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 13. Deerfield Crossing | 1111 Deerfield Road, Lebanon, OH  45036 | MV/ALG Deerfield Crossing Limited; Miller-Valentine Partners Ltd. |
| 14. Eagles Point Apartments | 815 Morningside Drive, Kenton, OH  43326 | MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 15. Fairway Breeze Apartments | 600 South Country Club Road, El Reno, OK 73036 | MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 16. Faith Community Housing | 1000 Dove Lane, Crestline, OH  44827 | MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 17. Fox Run (Fieldstone) | 261 Fieldstone Drive, Trotwood, OH  45426 | MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 18. Galena Estates | 1910 East Village Circle, Galena, KS  66739 | Galena Estates, LLC; MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 19. Gallatin Park Apartments | 271 Albert Gallatin Avenue, Gallatin, TN 37066 | Gallatin Park Apartments, LLC; MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 20. Glen Arbors Apartments | 2400 Glen Arbors Drive, Napoleon, OH  43545 | MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 21. Hampshire Landing | 2021 Hampshire Terrace, Joplin, MO  64804 | Hampshire Terrace II Limited Partnership; MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 22. Harbour Cove Apartments | 500 Anchor Drive, Cincinnati, OH  45255 | MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 23. Harmony Senior Village | 175 North 8th Street, Williamsburg, OH  45176 | Harmony Senior Village, LLC; MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |

| | | |
|---|---|---|
| 24. Holly Hills Apartments | 700 Holly Hills Drive, Jackson, OH  45640 | MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 25. Honey Creek | 1786 Honey Lane, Greenwood, IN  46143 | MV/ALG Honey Creek Limited; Miller-Valentine Partners Ltd. |
| 26. Hoover Place | 5407 Hoover Avenue, Dayton, OH  45417 | MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 27. Hunter's Oak Apartments | 1199 East Russ Road, Greenville, OH  45331 | MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 28. Indian Trace I | 5081 Red Cloud Court, Oxford, OH  45056 | Indian Trace Limited Partnership; Miller-Valentine Apartments II Ltd.; Miller-Valentine Partners Ltd. |
| 29. Indian Trace II | 5081 Red Cloud Court, Oxford, OH  45056 | Arrowhead Crossing Limited; Miller-Valentine Partners Ltd. |
| 30. Lake Town Senior | 4975 Lake Towne Drive, Walbridge, OH 43465 | Lake Towne Senior Village, LLC; MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 31. Lofts at Hoover | 5348 Joshua Trail, Dayton, OH  45417 | MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 32. Lofts at One West High | 1 West High Street, Oxford, OH  45056 | MVO Holdings LLC; MV Commercial Construction LLC |
| 33. Lyon Place I | 1300 Genesis Way, Dayton, OH  45417 | MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 34. Lyons Place II | 4100 West Third Street, Dayton, OH  45428 | MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 35. Madison Place Senior | 4200 Forbes Road, Gastonia, NC  28054 | Madison Place Senior Apartments, LLC; MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 36. Mallard Glen | 21 Lori Lane, Amelia, OH  45102 | Miller-Valentine Apartments II Ltd.; Miller-Valentine Partners Ltd |

| | | |
|---|---|---|
| 37. Mallard Landing | 1205 Lake Boulevard, Marion, OH 43302 | MV/ALG Mallard Landing Limited; Miller-Valentine Partners Ltd. |
| 38. Meadow Creek Apartments | 1700-A East High Street, Bryan, OH 43506 | MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 39. Meadow View South (fka Timber Creek Apartments) | 45 Clearcreek Road, Springboro, OH 45066 | MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 40. Meadow Vista Sr. Villas | 1806 28th Avenue, SW, Altoona, IA 50009 | Meadow Vista Senior Villas, LLC; MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 41. Mill Pond | 5310 West Keller Road, Muncie, IN 47304 | MV/ALG Mill Pond Limited; Miller-Valentine Partners Ltd. |
| 42. Oak Ridge Apartments | 339 10th Street, Nolanville, TX 76559 | TX Nolanville Apartments, Ltd. Co.; MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 43. Oak Wood Apartments | 335 Castor Road, Lexington, OH 44904 | MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 44. Pheasant Run Senior | 2920 Old Troy Pike, Dayton, OH 45404 | MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 45. Pine Ridge | 33520 Pine Ridge Drive, Logan, OH 43138 | MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 46. Pinecrest Apartments | 3605 Martins Trail Circle, Walkertown, NC 27051 | Pinecrest Apartments, LLC; MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 47. Quail Run Apartments | 641 North Franklin Street, Van Wert, OH 45891 | MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 48. Queen Esther's Village | 415 17th Street, SE, Canton, OH 44707 | MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 49. Reserve at Oak Spring (Reserve at Rose Bud) | 100 Oak Spring Court, Clarksburg, WV 26301 | Reserve at Rose Bud, LLC; MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |

| | | |
|---|---|---|
| 50. Reserve at Spencer | 8400 NE 36th Street, Spencer, OK  73084 | Reserve at Spencer, LLC; MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 51. River Crossing | 8030 Sycamore Creek Drive, Charlotte, NC 28273 | MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 52. Riverside Landing at Delaware Place | 351 South Sandusky Street, Delaware, OH 43015 | Delaware Place Senior Apartments, LLC; MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 53. Riverview Bluffs | 104 River Valley Boulevard, New Richmond, OH  45157 | Riverview Bluffs Associates, LP; MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 54. Sandhurst | 3139 Sandhurst Drive, Zanesville, OH  43701 | MV/ALG Sandhurst Limited; Miller-Valentine Partners Ltd. |
| 55. Scioto Woods I | 2097 Western Avenue, Chillicothe, OH  45601 | MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 56. Scioto Woods II | 2097 Western Avenue, Chillicothe, OH  45601 | Scioto Woods II LLC; Miller-Valentine Apartments II Ltd.; Miller-Valentine Partners Ltd. |
| 57. Siena Village Senior Living (aka Mercy Siena Village) | 6045 North Main Street, Dayton, OH  45415 | Mercy Siena Village Limited Partnership; Miller-Valentine Apartments II Ltd.; Miller-Valentine Apartments II Ltd; Miller-Valentine Partners Ltd. |
| 58. Silversage Point at Western Center | 1800 Western Center Boulevard, Fort Worth, TX  76131 | Western Center Reserve LLC; MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 59. St. Bernard Commons | 5007 Greenlee Avenue, St. Bernard, OH  45217 | MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 60. St. Rita's Senior Housing | 10614 Ganger Road, Garfield Heights, OH 44125 | St. Rita's Housing, LLC; MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 61. Stone Creek Apartments | 2686 Cobble Circle, Moraine, OH  45439 | MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 62. Summit Pointe (Deer Run II) | 203 Deer Run, Lawrenceburg, IN  40725 | MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |

| | | |
|---|---|---|
| 63. Sycamore Creek Apartments | 776 Country Side Lane, Sidney, OH 45365 | MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 64. The Enclave at Winston-Salem | 1489 Colony Lodge Street, Winston Salem, NC 27106 | The Enclave at Winston-Salem, LLC; MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 65. The Landings at Steele Creek I | 4520 Branch Bend Lane, Charlotte, NC 28273 | MV/ALG Steele Creek Limited; Miller-Valentine Partners Ltd. |
| 66. The Landings at Steele Creek II | 4520 Branch Bend Lane, Charlotte, NC 28273 | Steele Creek Apartments Limited Partnership; Miller-Valentine Apartments II Ltd.; Miller-Valentine Partners Ltd. |
| 67. Timber Glen II | 4486 Timber Glen Drive, Batavia, OH 45103 | Miller-Valentine Apartments II Ltd. |
| 68. Timber Ridge Apartments | 2190 Harshman Road, Dayton, OH 45424 | MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 69. Timberlake Apartments | 465 Timberlake Drive, Vandalia, OH 45414 | MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 70. Twin Cedars I | 1830 20th Avenue Drive NE, Hickory, NC 28601 | MV/ALG Twin Cedars Limited; Miller-Valentine Partners Ltd. |
| 71. Twin Cedars II | 1830 20th Avenue Drive NE, Hickory, NC 28601 | Twin Cedars Limited Partnership; Miller-Valentine Apartments II Ltd.; Miller-Valentine Partners Ltd. |
| 72. Twin Lakes Senior Villas | 405 Twin Lakes Drive, Rantoul, IL 61886 | Twin Lakes Senior Villas Limited Partnership; MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 73. Villas at Twin Cedars | 1866 20th Avenue Drive NE, Hickory, NC 28601 | Villas at Twin Cedars, LLC; MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 74. Walkers Ridge Apartments (Weatherwood) | 5000 Walkers Trail, Greensburg, PA 15601 | Weatherwood Place Limited Partnership; MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 75. Walnut Run Senior Villas (aka Villas of Cortland Creek) | 105 Sunshine Drive, Cortland, OH 44410 | MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 76. Waterbury Apartments | 1150 South 14th Street, Decatur, IN 46733 | MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |

| | | |
|---|---|---|
| 77. Waterstone Landing | 12315 Roachton Road, Perrysburg, OH  43551 | Perrysburg Apartment Investment LLC; Miller-Valentine Partners Ltd. II |
| 78. Weaver Farm Apartments (fka Tamarack Trace) | 1000 Tamarack Circle, Florence, KY  41042 | Miller-Valentine Apartments II Ltd. |
| 79. Whitehouse Square Senior Villas | 7001 Park View Court, Whitehouse, OH  43571 | Whitehouse Square Senior Village, LLC; MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 80. Wind Ridge Apartments | 599 Wind Ridge Place, Tipp City, OH  45371 | MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |
| 81. Windsor Place | 3944 Camberlee Way, Beavercreek, OH  45324 | MV/ALG Windsor Place Limited; Miller-Valentine Partners Ltd. |
| 82. Wright Place Apartments | 2224 High Wheel Drive, Xenia, OH  45385 | MVO Holdings LLC; MV Residential Construction LLC; MV Residential Development LLC; MV Affordable Housing LLC |

## APPENDIX B

## NOTICE OF SETTLEMENT OF LAWSUIT

As you may know, federal law requires that multifamily housing facilities comply with certain design and construction requirements that allow persons with disabilities to access such buildings. There are also federal laws that require accessible design and construction of places of public accommodation, such as leasing offices, that are accessed by the general public.

Your property is subject to one or more of these federal laws. In 2019, the U.S. Department of Justice (the "government") filed a lawsuit alleging that certain facilities had not been designed and/or constructed in full compliance with the Fair Housing Act and Americans with Disabilities Act, *United States v. Miller-Valentine Operations, Inc.*, Case No. 1:19-cv-346 (S.D. Ohio). Your property is one of the multifamily housing facilities addressed in the lawsuit. Without admitting liability, the defendants named in the lawsuit reached a settlement with the government pursuant to which they agreed to pay for certain modifications of the properties named in the lawsuit to improve accessibility for persons with disabilities. A copy of the Consent Order is enclosed with this notice (collectively with this letter and any amendments to the preceding document, "Settlement Documents").

As a result of the settlement, the defendants agreed to make and pay for certain improvements to your apartment complex in accordance with the Settlement Documents, so long as you provide access to survey and perform certain construction at the property. If you agree to provide access to the defendants to perform this work, defendants will pay for a property surveyor, approved by the government, to assess which property elements (both common area and intra-unit features) may fall short of an accessibility protocol agreed to by the government and the defendants. If there are any areas that warrant remediation in accordance with the Settlement Documents, the defendants will arrange for such work to be completed, at their expense and at no cost to you. We realize that these steps may inconvenience you and your tenants, but our goal is to improve the facilities that were the subject of the lawsuit so that all persons – disabled and nondisabled – can more fully enjoy the properties. Therefore, we will work with you to determine a time that is least disruptive for a property surveyor to assess the property. A copy of the surveyor's assessment will be provided to you upon request after the survey is complete. Depending on the results of the surveyor's assessment, the government and defendants will develop a set of steps to address and remedy the issues, which will also be shared with you upon request. After that, defendants will pay to perform the agreed-upon remediation, taking reasonable steps to minimize the disruption to your operations and your tenants. Whenever possible, remediation will be performed at unit turnover, subject to the timeline worked out by the defendants and the government. After remediation, the property surveyor will inspect the apartment complex for compliance with the requirements of the consent order. Please note that

any and all improvements to be performed by defendants generally would be subject to the parameters identified in Attachment A.

We realize that this notice may raise certain questions, and we therefore encourage you to reach out to us within thirty (30) days of receipt of this notice to answer any open questions. Although you are not obligated to provide access to the defendants for purposes of surveying or performing repairs, we trust that you and your tenants and future tenants will be best served by permitting this work to be conducted in a timely fashion. We ask that you confirm within thirty (30) days of receiving this notice whether you will permit defendants to take the steps discussed herein, or to indicate whether access will not be granted and, if so, why not. The government retains the right to take legal action to seek to obtain access to properties for purposes of surveys and retrofits where consent is not provided by the current owners.

We thank you in advance for your anticipated cooperation.

Attachment A

a)  Defendants may take possession of, sell, or otherwise receive a credit
    for any usable materials, fixtures, or appliances removed as part of any
    retrofit;

b)  Defendants may relocate common area elements to another reasonable
    location (i.e. bench, grill, waste station, fire extinguisher, etc., can be
    relocated elsewhere on the property provided it is compliant with
    applicable building codes);

c)  Defendants will use materials to complete required retrofits that are of
    equivalent kind, quality, and nature to what was originally installed as
    part of the original design (based upon the original plans or
    specifications, if available) and that will require an equivalent effort or
    cost to install (e.g. replacing laminate countertops with stone would
    constitute an unreasonable cost increase, and replacing laminate with
    similarly priced tile would constitute an unreasonable and material
    increase in the effort and cost to install);

d)  Defendants need not modify compliant elements in order to establish
    continuity of design, color, or aesthetics (e.g. repaint walls to match
    new floors, or replace or paint cabinets to match countertops);

e)  Defendants need not extend alterations associated with a retrofit
    beyond the affected room (e.g. replaced flooring need not be extended
    beyond door thresholds to other rooms, or cabinets in other rooms need
    not be replaced to match retrofitted cabinets);

f)  Defendants may select a source or vendor for materials, fixtures, or
    appliances provided the material, fixture, or appliance is of comparable
    quality (e.g. name brand appliances are interchangeable); and

g)  Defendants will not make or implement any retrofits to any originally
    constructed condition, element, feature, or fixture that was rendered
    inaccessible by a subsequent property owner.

49

**APPENDIX C**

**NOTICE TO TENANTS**

Dear Tenant:

This is to advise you that, as a result of a settlement in a case brought by the United States against the owners of this apartment complex, we have agreed to make certain retrofits to the ground floor units [all units if elevator building] at _____ [Subject Property] to provide greater accessibility for people with disabilities. Your unit qualifies for those retrofits.

Although your apartment unit will be retrofitted automatically after your tenancy ends, we want you to know that you may request to have those retrofits performed sooner at no cost to you. The actual work will take no longer than ___ days from the date construction begins and we will provide you with another unit in this development or comparable alternative living arrangements during that time. If an alternative living arrangement is unavailable, we will provide you with a payment equivalent to the U.S. General Services Administration rate for temporary relocation expenses you incur. In scheduling when the retrofits will take place, we will take into account your preferences and convenience.

You should be aware that this work must be completed within the next [years], regardless of your intention to stay in your apartment for a longer duration. Please let us know if you are interested in having the retrofits done now and we will provide you with additional information.

The Management

## APPENDIX D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| MILLER-VALENTINE | ) |
| OPERATIONS, INC., et al., | ) |
|  | ) |
| Defendants. | ) |

## NOTICE TO POTENTIAL VICTIMS OF ALLEGED DISCRIMINATION AGAINST PERSONS WITH DISABILITIES AT MILLER-VALENTINE APARTMENT COMPLEXES

On _____, 2020, the United States District Court for the Southern District of Ohio entered a Consent Order resolving a housing discrimination lawsuit brought by the United States against Miller-Valentine Operations, Inc., *et al.*, and related apartment complex owners at eighty-two apartment complexes throughout Illinois, Indiana, Iowa, Kansas, Kentucky, Missouri, North Carolina, Ohio, Oklahoma, Pennsylvania, Tennessee, Texas, and West Virginia. The United States alleges that the units and many common use areas (for example, rental offices, routes to amenities, etc.) are not accessible to persons with physical disabilities. As part of the Consent Order, Defendants have agreed to retrofits to elements of the units and common use areas that are covered by the Fair Housing Act and the Americans with Disabilities Act at the following apartment complexes:

1. Galena Estates, Galena, KS
2. Reserve at Oak Spring, Clarksburg, WV
3. Lyons Place II, Dayton, OH
4. Oak Ridge Apartments, Nolanville, TX
5. Reserve at Spencer, Spencer, OK
6. Fairway Breeze Apartments, El Reno, OK
7. Silversage Point at Western Center, Fort Worth, TX
8. Hampshire Landing, Joplin, MO
9. Riverside Landing at Delaware Place, Delaware, OH
10. St. Bernard Commons, St. Bernard, OH

11. Twin Lakes Senior Villas, Rantoul, IL
12. Carriage Trails Senior Villas, Huber Heights, OH
13. Gallatin Park Apartments, Gallatin, TN
14. Meadow Vista Senior Villas, Altoona, IA
15. Summit Pointe, Lawrenceburg, IN
16. The Enclave at Winston-Salem, Winston-Salem, NC
17. Whitehouse Square Senior Villas, Whitehouse, OH
18. Allegheny Pointe, Apollo, PA
19. Lyons Place I, Dayton, OH
20. Waterstone Landing, Perrysburg, OH
21. Lofts at One West High, Oxford, OH
22. St. Rita's Senior Housing, Garfield Heights, OH
23. Faith Community Housing, Crestline, OH
24. Lake Towne Senior, Walbridge, OH
25. Queen Esther's Village, Canton, OH
26. Walkers Ridge Apartments, Greensburg, PA
27. Walnut Run Senior Villas, Cortland, OH
28. Harmony Senior Village, Williamsburg, OH
29. Lofts at Hoover, Dayton, OH
30. Pinecrest Apartments, Walkertown, NC
31. Pine Ridge, Logan, OH
32. Riverview Bluffs, New Richmond, OH
33. Villas at Twin Cedars, Hickory, NC
34. Pheasant Run Senior, Dayton, OH
35. Scioto Woods II, Chillicothe, OH
36. Wright Place Apartments, Xenia, OH
37. Madison Place Senior, Gastonia, NC
38. Honey Creek, Greenwood, IN
39. River Crossing, Charlotte, NC
40. Sandhurst, Zanesville, OH
41. The Landings at Steele Creek I, Charlotte, NC
42. Twin Cedars I, Hickory, NC
43. Deerfield Crossing, Lebanon, OH
44. Holly Hills Apartments, Jackson, OH
45. Mallard Glen, Amelia, OH
46. Mallard Landing, Marion, OH
47. The Landings at Steele Creek II, Charlotte, NC
48. Twin Cedars II, Hickory, NC
49. Bridge Street Landing, Chillicothe, OH
50. Brookdale Trillium Crossing, Columbus, OH
51. Brookstone Apartments, Bellefontaine, OH
52. Cedar Wood Apartments, Mansfield, OH
53. Meadow Creek Apartments, Bryan, OH
54. Mill Pond, Muncie, IN

55.   Oak Wood Apartments, Lexington, OH
56.   Sycamore Creek Apartments, Sidney, OH
57.   Timberlake Apartments, Vandalia, OH
58.   Windsor Place, Beavercreek, OH
59.   Bent Tree Apartments II, Piqua, OH
60.   Eagles Point Apartments, Kenton, OH
61.   Glen Arbors Apartments, Napoleon, OH
62.   Hoover Place, Dayton, OH
63.   Indian Trace II, Oxford, OH
64.   Waterbury Apartments, Decatur, IN
65.   Breckenridge Apartments, Findlay, OH
66.   Fox Run, Trotwood, OH
67.   Hunter's Oak Apartments, Greenville, OH
68.   Indian Trace I, Oxford, OH
69.   Quail Run Apartments, Van Wert, OH
70.   Scioto Woods I, Chillicothe, OH
71.   Aspen Grove Apartments, Middletown, OH
72.   Bent Tree Apartments I, Piqua, OH
73.   Cobblegate Square Apartments, Moraine, OH
74.   Siena Village Senior Living, Dayton, OH
75.   Stone Creek Apartments, Moraine, OH
76.   Timber Glen II (TGII), Batavia, OH
77.   Timber Ridge Apartments, Dayton, OH
78.   Weaver Farm Apartments, Florence, KY
79.   Wind Ridge Apartments, Tipp City, OH
80.   Cedar Trail, Bellbrook, OH
81.   Harbour Cove Apartments, Cincinnati, OH
82.   Meadow View South, Springboro, OH

The Consent Order also establishes a Settlement Fund to compensate persons who have been harmed as a result of this alleged discrimination at any of the above-named complexes. You or members of your family may be qualified to recover from the Settlement Fund if you or members of your family:

- were discouraged from living at any of the above-named complexes because of the lack of accessible features of the apartment or the complex;

- rented an apartment but were unable to use, or had difficulties using portions of your apartment or the complex because they were not accessible (including the inability to have visitors who have disabilities);

- paid to have any portion of your apartment or the complex modified to be more accessible;

- were not informed about, or offered, all available apartment units because of your disability or the disability of someone who would be living with you; or

- requested and were denied a reasonable accommodation for your disability or the disability of someone who was living with you.

*If you believe you may have been harmed because of your disability at any of the above-named apartment complexes, or if you have information about someone else who may have been harmed, please contact the United States Department of Justice at: 1-800-XXX-XXXX, ext. XX.*

*You also may write to United States Department of Justice, Civil Rights Division, Housing and Civil Enforcement Section, 150 M Street, NE, Washington, DC, 20530, Att: DJ 175-58-251*

**\*\*\* You must call or write no later than 1 year from the [date of entry of the Consent Order] to be eligible for compensation, and your telephone message or letter must include your name, address, and, if possible, at least two telephone numbers where you may be reached.**

## APPENDIX E

## RELEASE OF ALL CLAIMS

In consideration of and contingent upon the payment of the sum of ($_____ ), in accordance with the Consent Order entered in *United States* v. *Miller-Valentine Operations, Inc., et al.*, 19-cv-346 (S.D. Ohio), by the United States District Court, Southern District of Ohio, I hereby release and forever discharge Defendants named in this action from any and all liability for any claims, legal or equitable, I may have against them arising out of the issues alleged in this action as of the date of the entry of that Consent Order. I fully acknowledge and agree that this release of Defendants will be binding on my heirs, representatives, executors, successors, administrators, and assigns. I hereby acknowledge that I have read and understand this release and have executed it voluntarily and with full knowledge of its legal consequences.

(Signature)

NAME: _____

ADDRESS: _____

DATE: _____

**APPENDIX F**

**ACKNOWLEDGMENT OF RECEIPT OF CONSENT ORDER**

On _____, I received a copy of and have read the Consent Order entered by the federal district court in *United States* v. *Miller-Valentine Operations, Inc., et al.*, 19-cv-346 (S.D. Ohio). I have had all of my questions concerning the Consent Order, the Fair Housing Act, and the Americans with Disabilities Act answered to my satisfaction.

_____
(Signature)


_____
(Print
name)


_____
(Position)


_____
(Date)

**APPENDIX G**

**CERTIFICATION OF FAIR HOUSING TRAINING**

On _____, I attended training on the federal Fair Housing Act and Americans with Disabilities Act, including its requirements concerning physical accessibility for people with disabilities. I have had all of my questions concerning the Fair Housing Act and Americans with Disabilities Act answered to my satisfaction.

_____
(Signature)

_____
(Print name)

_____
(Position)

_____
(Date)

## APPENDIX H

## NOTICE OF RETROFITS TO PUBLIC AND COMMON USE AREAS AT [SUBJECT PROPERTY]

The federal Fair Housing Act requires that the public and common use areas at complexes such as [SUBJECT PROPERTY] have certain features of physical accessibility for persons with disabilities.

As a result of recent events, it has been brought to our attention that certain features of the public and common areas of [SUBJECT PROPERTY] can be modified to provide greater accessibility for persons with disabilities, consistent with the accessibility requirements of the federal Fair Housing Act. We welcome persons with disabilities as residents and guests at [SUBJECT PROPERTY]. We are writing this notice to let you know that beginning on [DATE], contractors will be coming onto the property to begin the process of modifying certain aspects of the public and common use areas. We expect the process to last approximately _____ weeks, weather permitting.

Generally, the workers will modify or "retrofit" certain sidewalks, install curb cuts and ramps or modify existing ones along certain pathways to certain ground-floor units. They will also be making some modifications to the leasing office and laundry facility, as well as to other areas, to make them more accessible to persons with disabilities. We apologize for any inconveniences you may incur as a result of this work.

If you have any questions regarding these modifications, please contact us at _____.

# APPENDIX I

## LIST OF ORGANIZATIONS

- HOPE Fair Housing Center, 202 W. Willow St., Ste. 203, Wheaton, IL 60187

- Open Communities, 990 Grove St., #500, South Suburban Housing Center, 18220 Hardwood Avenue, Ste. #1, Homewood, IL 60430

- Statewide Independent Living Council of Illinois, One West Old State Capitol Plaza, Ste. 716, Springfield, IL 62701

- Center for Disability and Elder Law, 205 W. Randolph, Ste. 1610, Chicago, IL 60606

- Equip For Equality, 20 North Michigan Ave., Ste. 300, Chicago, IL 60602

- Housing Action Illinois, 67 E Madison St., Ste. 1603, Chicago, IL 60603

- Prairie State Legal Aid, 303 N Main St., Ste. 600, Rockford IL, 61101

- Fair Housing Center of Indiana, 445 N. Pennsylvania St., Ste. 811, Indianapolis, IN 46204

- Central Indiana Aging and Disability Resource Center, 8440 Woodfield Crossing Blvd., Ste. 175, Indianapolis, IN 46240-4359; and 110 N. Main St., Martinsville, IN 46151

- Disability Legal Services of Indiana, 5954 N College Ave., Indianapolis, IN 46220

- Indiana Statewide Independent Living Council, P.O. Box 801, Danville, IN 46122

- Family Housing Advisory Services, Inc., Iowa Office, 10 S 4th St. Council Bluffs, IA 51503

- Disability Rights Iowa, 400 E Court Ave., Ste. 300, Des Moines, IA 50309

- Iowa Legal Aid, 1111 9th Street, Suite 230, Des Moines, IA 50314

- Iowa Statewide Independent Living Council, 300 East Locust, Ste. 300, Des Moines, IA 50309

- Disability Rights Center of Kansas, 214 SW 6th Ave., Ste. 100, Topeka, KS 66603

- Statewide Independent Living Council of Kansas, P.O. Box 692, Tonganoxie, KS 66086

- Lexington Fair Housing Council, 207 E Reynolds Rd # 130, Lexington, KY 40517

- Kentucky Protection and Advocacy, 5 Mill Creek Park, Frankfort, KY 40601

- Kentucky Statewide Independent Living Council, Department for Aging and Independent Living, 275 E. Main Street 3E-E, Frankfort, KY 40621

- Metro St. Louis Equal Housing, 1027 S Vandeventer Ave # 4, St. Louis, MO 63110

- Great Plains ADA Center, 100 Corporate Lake Dr., Columbia, MO 65203

- Disabled Citizens Alliance for Independence, Inc., P.O. Box 675, Viburnum, MO 65566

- MSU Disability Resource Center, 901 S. National Ave., Springfield, MO 65897

- Missouri Protection & Advocacy Services, 925 South Country Club Dr., Jefferson City, MO 65109

- Missouri Independent Living Council, P.O. Box 104174, Jefferson City, MO 65110

- Center for Human Services, 1500 Ewing Drive, Sedalia, MO 65301

- North Carolina Fair Housing Center, 114 West Parrish Street, Durham, NC 27701

- North Carolina Housing Coalition, 118 St. Mary's Street, Raleigh, NC 27685

- North Carolina Statewide Independent Living Council, 505 Oberlin Road, Suite 206, Raleigh, NC 27605

- Alliance of Disability Advocates, 1012 Oberlin Road, Suite 300, Raleigh, NC 27605

- Disability Rights and Resources, 600 East Trade Street, Charlotte, NC 28202

- Disability Rights North Carolina, 3724 National Drive, Suite 160, Raleigh, NC 27612

- Fair Housing Project, 224 South Dawson Street, Raleigh, NC 27601

- Central Ohio Fair Housing Association, Rhodes State Office Tower, 30 E Broad St, 5th floor, Columbus, OH 43215

- Fair Housing Advocates Association, 520 S. Main Street #2459, Akron, Ohio 44311

- Fair Housing Contact Service, Inc., 441 Wolf Ledges Pkwy #200, Akron, OH 44311

- Fair Housing Resource Center, Inc., 1100 Mentor Ave, Painesville, OH 44077

- Heights Community Congress, P.O. Box 18492, Cleveland Heights, OH 44118-0492

- Fair Housing Center for Rights and Research, 2728 Euclid Ave #200, Cleveland, OH 44115

- Miami Valley Fair Housing Center, Inc., 1101 Vermont Ave NW, Washington, DC 20005

- Toledo Fair Housing Center, 432 N. Superior, Toledo, OH 43604

- Disability Rights Ohio, 200 S Civic Center Dr. #300, Columbus, OH 43215

- Ohio Association on Aging, 88 E. Broad St, Suite 870, Columbus, Ohio 43215

- Ohio Statewide Independent Living Council  670 Morrison Rd., Suite 200, Gahanna, OH 43230

- Metropolitan Fair Housing Council of OK, Inc., 312 NE 28th St Suite #112, Oklahoma City, OK 73105

- Oklahoma Disability Law Center, 5600 N. May Ave., Suite 260, Oklahoma City, OK 73112

- Oklahoma Statewide Independent Living Council, 3535 NW 58th Street, Suite 480, Oklahoma City, OK 73112

- Philadelphia Corporation for Aging, 642 North Broad Street, Philadelphia, PA 19130-3424

- Philadelphia Statewide Independent Living Council, 207 House Avenue, Suite 107, Room 14, Camp Hill, PA 17011

- Tennessee Fair Housing Council, 107 Music City Cir, Nashville, TN 37214

- Disability Rights Tennessee, 2 International Plaza, Ste. 825, Nashville, TN 37217

- Tennessee Commission on Aging and Disability, 502 Deaderick St, Nashville, TN 37243

- TN Disability Coalition, 955 Woodland St., Nashville, TN 37206

- Tennessee Disability Pathfinder (Vanderbilt Kennedy Center for Excellence in Developmental Disabilities), 110 Magnolia Circle, Nashville, TN 37203

- The Memphis Center for Independent Living, 5100 Poplar Avenue, Ste. 810, Memphis, TN 38137

- Tennessee Statewide Independent Living Council, Statewide Independent Living Council, 23 Federal Drive, Jackson, TN 38305

- Austin Tenant's Council, 1640 E 2nd St # B150, Austin, TX 78702

- Fair Housing Council of Greater San Antonio, 4414 Centerview Dr. #229, San Antonio, TX 78228

- Greater Houston Fair Housing Center, Inc., 2626 S Loop W Fwy #406, Houston, TX 77054

- North Texas Fair Housing Center, 8625 King George Dr., Dallas, TX 75235

- Texas State Independent Living Council, 1524 South Interstate 35, Ste. 320, Austin, TX 78704

- Coalition of Texans with Disabilities, 1716 San Antonio St., Austin, TX 78701

- Disability Rights West Virginia, 1207 Quarrier St., Ste. 400, Charleston, WV 25301

- Mountain State Centers for Independent Living, 329 Prince St., Beckley, WV 25801

- Legal Aid of West Virginia, 922 Quarrier St., 4th Fl., Charleston, WV 25301

- West Virginia Statewide Independent Living Council, P.O. Box 625, Institute, WV 25112

- Northern West Virginia Center for Independent Living, 601-603 East Brockway, Suite A & B, Morgantown, WV 26501